(Slip Opinion)     OCTOBER TERM, 2020     1

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## CARR ET AL. *v.* SAUL, COMMISSIONER OF SOCIAL SECURITY

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE TENTH CIRCUIT

No. 19–1442.   Argued March 3, 2021—Decided April 22, 2021*

Petitioners are six individuals whose applications for disability benefits were denied by the Social Security Administration (SSA). They each unsuccessfully challenged their respective adverse benefit determination in a hearing before an SSA administrative law judge (ALJ). The SSA Appeals Council denied discretionary review in each case. Thereafter, this Court decided *Lucia* v. *SEC*, 585 U. S. ___, which held that the appointment of Securities and Exchange Commission ALJs by lower level staff violated the Constitution's Appointments Clause. Because the SSA ALJs who denied petitioners' claims were also appointed by lower level staff, petitioners argued in federal court that they were entitled to a fresh administrative review by constitutionally appointed ALJs. In each case, the Court of Appeals held that petitioners could not obtain judicial review of their Appointments Clause claims because they failed to raise those challenges in their administrative proceedings.

*Held*: The Courts of Appeals erred in imposing an issue-exhaustion requirement on petitioners' Appointments Clause claims. Pp. 4–12.

   (a) Administrative review schemes commonly require parties to give the agency an opportunity to address an issue before seeking judicial review of that question. Such administrative issue-exhaustion requirements are typically creatures of statute or regulation. But where,

———————

*Together with No. 20–105, *Davis et al.* v. *Saul, Commissioner of Social Security,* on certiorari to the United States Court of Appeals for the Eighth Circuit.

as here, no statute or regulation imposes an issue-exhaustion require-
ment, courts decide whether to require issue exhaustion based on "an
analogy to the rule that appellate courts will not consider arguments
not raised before trial courts." *Sims* v. *Apfel,* 530 U. S. 103, 109. "[T]he
desirability of a court imposing a requirement of issue exhaustion de-
pends on the degree to which the analogy to normal adversarial litiga-
tion applies in a particular administrative proceeding." *Ibid.* In *Sims*,
which declined to apply an issue-exhaustion requirement to SSA Ap-
peals Council proceedings, the Court explained that "the rationale for
requiring issue exhaustion is at its greatest" when "the parties are ex-
pected to develop the issues in an adversarial administrative proceed-
ing," but is "much weaker" when "an administrative proceeding is not
adversarial." *Id.*, at 110. Although *Sims* dealt with administrative
review before the SSA Appeals Council, much of the opinion's rationale
applies equally to SSA ALJ proceedings. Pp. 4–8.

(b) Even assuming that ALJ proceedings are comparatively more ad-
versarial than Appeals Council proceedings, the question remains
whether the ALJ proceedings here were adversarial enough to support
the "analogy to judicial proceedings" that undergirds judicially created
issue-exhaustion requirements. *Sims*, 530 U. S., at 112 (plurality
opinion). Pp. 8–12.

(1) In the specific context of petitioners' Appointments Clause
challenges, two considerations tip the scales decidedly against impos-
ing an issue-exhaustion requirement. First, agency adjudications are
generally ill suited to address structural constitutional challenges,
which usually fall outside the adjudicators' areas of technical exper-
tise. See, *e.g., Free Enterprise Fund* v. *Public Company Accounting
Oversight Bd.,* 561 U. S. 477, 491. Second, this Court has consistently
recognized a futility exception to exhaustion requirements. See, *e.g.,
Bethesda Hospital Assn.* v. *Bowen,* 485 U. S. 399, 405–406. Both con-
siderations apply fully here: Petitioners assert purely constitutional
claims about which SSA ALJs have no special expertise and for which
they can provide no relief. *United States* v. *L. A. Tucker Truck Lines,
Inc.,* 344 U. S. 33, distinguished. Pp. 9–11.

(2) The Commissioner's contention that petitioners cannot obtain
new hearings because they did not "timely challenge" their adjudica-
tors' appointments presumes what the Commissioner has failed to
prove: that petitioners' challenges are, in fact, untimely. The Commis-
sioner's reliance on *Ryder* v. *United States,* 515 U. S. 177, and *Lucia*,
585 U. S. ___, is misplaced, as neither decision had occasion to opine
on what would constitute a "timely" objection in an administrative re-
view scheme like the SSA's. Pp. 11–12.

961 F. 3d 1267 and 963 F. 3d 790, reversed and remanded.

SOTOMAYOR, J., delivered the opinion of the Court, in which ROBERTS, C. J., and ALITO, KAGAN, and KAVANAUGH, JJ., joined, in which THOMAS, GORSUCH, and BARRETT, JJ., joined as to Parts I, II–A, and II–B–2, and in which BREYER, J., joined as to Parts I, II–B–1, and II–B–2. THOMAS, J., filed an opinion concurring in part and concurring in the judgment, in which GORSUCH and BARRETT, JJ., joined. BREYER, J., filed an opinion concurring in part and concurring in the judgment.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

Nos. 19–1442 and 20–105

WILLIE EARL CARR, ET AL., PETITIONERS
19–1442             *v.*
ANDREW M. SAUL, COMMISSIONER OF
SOCIAL SECURITY

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE TENTH CIRCUIT

JOHN J. DAVIS, ET AL., PETITIONERS
20–105             *v.*
ANDREW M. SAUL, COMMISSIONER OF
SOCIAL SECURITY

THOMAS HILLIARD, PETITIONER
*v.*
ANDREW M. SAUL, COMMISSIONER OF
SOCIAL SECURITY

ON WRITS OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE EIGHTH CIRCUIT

[April 22, 2021]

JUSTICE SOTOMAYOR delivered the opinion of the Court.

When the Social Security Administration (SSA) denies a claim for disability benefits, a claimant who wishes to contest that decision in federal court must first seek a hearing before an administrative law judge (ALJ). The petitioners here did just that: They each unsuccessfully challenged an adverse benefits determination in ALJ proceedings, and

they now ask for judicial review. Specifically, petitioners argue that they are entitled to new hearings before different ALJs because the ALJs who originally heard their cases were not properly appointed under the Appointments Clause of the U. S. Constitution. The question for the Court is whether petitioners forfeited their Appointments Clause challenges by failing to make them first to their respective ALJs. The Court holds that petitioners did not forfeit their claims.

I

The six petitioners in these consolidated cases each applied for disability benefits between 2013 and 2015.[1] After their applications were denied, petitioners followed the prescribed steps for seeking administrative review. They sought reconsideration of the agency's initial determination, received a hearing before an ALJ, and requested review by the SSA's Appeals Council. See 20 CFR §404.900(a). Petitioners were unsuccessful at every stage, concluding with the Appeals Council, which denied discretionary review.

This Court then held in *Lucia* v. *SEC*, 585 U. S. ___ (2018), that ALJs within the Securities and Exchange Commission (SEC) had been unconstitutionally appointed. Under the Appointments Clause, only the President, "Courts of Law," or "Heads of Departments" may appoint "Officers of the United States." Art. II, §2, cl. 2; see *Lucia*, 585 U. S., at ___ (slip op., at 5). The *Lucia* Court determined that SEC ALJs were "Officers" rather than mere employees because they held "a continuing office established by law," exercised

––––––––––

[1] The Social Security Act provides disability benefits under two programs, Title II and Title XVI. Some petitioners sought benefits under Title II only, some under Title XVI only, and some under both. The distinctions between the two programs are irrelevant for present purposes. For ease of reference, this opinion cites only to the regulations governing Title II, found at 20 CFR pt. 404 (2020).

"'significant discretion' when carrying out . . . 'important functions,'" and often had the last word in SEC proceedings. *Id.,* at \_\_\_–\_\_\_ (slip op., at 8–10). Consequently, the appointment of SEC ALJs by SEC staff violated the Constitution. *Id.,* at \_\_\_, \_\_\_ (slip op., at 3, 12).

Like the SEC ALJs at issue in *Lucia*, SSA ALJs had been selected by lower level staff rather than appointed by the head of the agency. On July 16, 2018, a few weeks after *Lucia* was decided, the SSA's Acting Commissioner preemptively "address[ed] any Appointments Clause questions involving Social Security claims" by "ratif[ying] the appointments" of all SSA ALJs and "approv[ing] those appointments as her own." 84 Fed. Reg. 9583 (2019). The following year, the SSA issued a ruling stating that the Appeals Council should, in response to timely requests for Appeals Council review, vacate preratification ALJ decisions and provide fresh review by a properly appointed adjudicator. *Ibid.* That remedy was only available, however, to claimants who had raised an Appointments Clause challenge in either their ALJ or Appeals Council proceedings. *Ibid.* Claimants who had not objected to the ALJs' appointments in their administrative proceedings would receive no relief. See *ibid.*

Petitioners fell into this latter category. By the time the SSA issued its ruling, their administrative proceedings had concluded, and they were seeking review of the SSA's decisions in federal court. Following *Lucia*, each petitioner asked the Federal District Court (or, in some cases, the Federal Magistrate Judge) for a new hearing before a constitutionally appointed ALJ. The Commissioner did not dispute that the ALJs who decided petitioners' cases were unconstitutionally appointed, but contended instead that petitioners had forfeited their Appointments Clause challenges by failing to raise them before the agency.

In three separate decisions (covering all six petitioners),

the U. S. Courts of Appeals for the Eighth and Tenth Circuits adopted the Commissioner's forfeiture argument. In those Circuits' view, petitioners could not obtain judicial review of their Appointments Clause claims because they had not pressed those challenges in their administrative proceedings. 963 F. 3d 790, 793 (CA8 2020); 964 F. 3d 759, 763 (CA8 2020); *Carr* v. *Commissioner, SSA*, 961 F. 3d 1267, 1268 (CA10 2020). The Third, Fourth, and Sixth Circuits have all held the opposite. In those Circuits, claimants may challenge the constitutionality of an SSA ALJ's appointment for the first time in federal court. See *Cirko* v. *Commissioner of Social Security*, 948 F. 3d 148, 152 (CA3 2020); *Probst* v. *Saul*, 980 F. 3d 1015, 1020 (CA4 2020); *Ramsey* v. *Commissioner of Social Security*, 973 F. 3d 537, 546 (CA6 2020). The Court granted certiorari to resolve this conflict. 592 U. S. ___ (2020).

## II

Administrative review schemes commonly require parties to give the agency an opportunity to address an issue before seeking judicial review of that question. The source of this requirement (known as issue exhaustion) varies by agency.[2] Typically, issue-exhaustion rules are creatures of statute or regulation. *Sims* v. *Apfel*, 530 U. S. 103, 107–108 (2000); see *United States* v. *L. A. Tucker Truck Lines, Inc.*, 344 U. S. 33, 36, n. 6 (1952) (collecting statutes). Where statutes and regulations are silent, however, courts decide whether to require issue exhaustion based on "an analogy to the rule that appellate courts will not consider arguments not raised before trial courts." *Sims*, 530 U. S., at

--------

[2] Issue exhaustion should not be confused with exhaustion of administrative remedies. There is no dispute in these cases that petitioners exhausted their administrative remedies, meaning that they proceeded through each step of the SSA's administrative review scheme and received a "final decision" before seeking judicial review. See 42 U. S. C. §405(g).

108–109. The Commissioner concedes that no statute or regulation obligated petitioners to raise their Appointments Clause challenges in administrative proceedings. See Brief for Respondent 12, 35, n. 2; Tr. of Oral Arg. 39. Instead, the Commissioner asks this Court to impose a judicially created issue-exhaustion requirement in these cases.

## A

"[T]he desirability of a court imposing a requirement of issue exhaustion depends on the degree to which the analogy to normal adversarial litigation applies in a particular administrative proceeding." *Sims*, 530 U. S., at 109. In conducting this inquiry, courts must take care not to "reflexively 'assimilat[e] the relation of . . . administrative bodies and the courts to the relationship between lower and upper courts.'" *Id.,* at 110 (quoting *FCC* v. *Pottsville Broadcasting Co.*, 309 U. S. 134, 144 (1940)). Instead, "[t]he inquiry requires careful examination of 'the characteristics of the particular administrative procedure provided.'" 530 U. S., at 113 (O'Connor, J., concurring in part and concurring in judgment) (quoting *McCarthy* v. *Madigan*, 503 U. S. 140, 146 (1992)). The critical feature that distinguishes adversarial proceedings from inquisitorial ones is whether claimants bear the responsibility to develop issues for adjudicators' consideration.[3]

---

[3] The Commissioner invokes the "general rule," recognized in cases such as *L. A. Tucker Truck Lines*, that "orderly procedure and good administration require that objections to the proceedings of an administrative agency be made while it has opportunity for correction in order to raise issues reviewable by the courts." *United States* v. *L. A. Tucker Truck Lines, Inc.*, 344 U. S. 33, 37 (1952); see also *Hormel* v. *Helvering*, 312 U. S. 552, 557 (1941); *Unemployment Compensation Comm'n of Alaska* v. *Aragon*, 329 U. S. 143, 154–155 (1946). That general rule, however, originated in cases that "each involved an adversarial proceeding." *Sims* v. *Apfel*, 530 U. S. 103, 110 (2000). Where claimants are not ex-

With respect to the nature of the SSA proceedings at issue here, our inquiry starts from the baseline set by *Sims* v. *Apfel.* There, this Court held that issues not raised before the Appeals Council (the final stage of administrative review within the SSA) are nonetheless preserved for judicial review. In so holding, the Court explained that "the rationale for requiring issue exhaustion is at its greatest" when "the parties are expected to develop the issues in an adversarial administrative proceeding," but "the reasons for a court to require issue exhaustion are much weaker" when "an administrative proceeding is not adversarial." 530 U. S., at 110.

The plurality went on to explain that "[t]he differences between courts and agencies are nowhere more pronounced than in Social Security proceedings," where administrative "proceedings are inquisitorial rather than adversarial." *Id.,* at 110–111. Regulations governing SSA proceedings "expressly provide that the SSA 'conduct[s] the administrative review process in an informal, nonadversary manner'" and assures claimants that the SSA "'will consider at each step of the review process any information you present as well as all the information in our records.'" *Id.,* at 111 (quoting 20 CFR §404.900(b) (1999)). At the Appeals Council level, "the Council's review is plenary unless it states otherwise." *Sims*, 530 U. S., at 111 (plurality opinion). Rather than appear "as a litigant opposing the claimant," the Commissioner serves "just as an adviser to the Council." *Ibid.* Claimants are not required to file a brief; indeed, the SSA's standard form "provides only three lines for [a claimant's] request for review." *Id.,* at 112. A notice "accompanying

_____

pected to develop certain issues in ALJ proceedings, it is generally inappropriate to treat those issues as forfeited. See *id.,* at 109 ("[C]ourts require administrative issue exhaustion 'as a general rule' because it is usually 'appropriate under [an agency's] practice' for 'contestants in an adversary proceeding' before it to develop fully all issues there" (quoting *L. A. Tucker Truck Lines*, 344 U. S., at 36–37)).

the form estimates that it will take only 10 minutes to 'read the instructions, gather the necessary facts and fill out the form.'" *Ibid.* Thus, in the context of Appeals Council review, the plurality observed that the "adversarial development of issues by the parties . . . on which [the judicial-proceedings] analogy depends simply does not exist." *Ibid.*

Justice O'Connor concurred in the judgment. In her view, "the agency's failure to notify claimants of an issue exhaustion requirement" provided a "sufficient basis" for refusing to impose one by judicial decree. *Id.,* at 113. "Requiring issue exhaustion is particularly inappropriate," she explained, "where the regulations and procedures of the [SSA] affirmatively suggest that specific issues need not be raised before the Appeals Council." *Ibid.*

Much of what the *Sims* opinions said about Appeals Council review applies equally to ALJ proceedings. The *Sims* plurality itself noted that "[i]t is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits" and that "[t]he Commissioner has no representative before the ALJ to oppose the claim for benefits." *Id.,* at 111. The SSA regulations that ensure informal, nonadversarial proceedings and plenary review apply as much to ALJs as to the Appeals Council. See 20 CFR §404.900(b). Regulations also provide that ALJs will "loo[k] fully into the issues" themselves, §404.944, and may "raise a new issue" at "any time . . . before mailing notice of the hearing decision," §404.946(b)(1). Like the form supplied by the SSA to request Appeals Council review, the form to request an ALJ hearing provides roughly three lines for claimants to explain their disagreement with the agency's determination, and the SSA "estimate[s]" that it will take just "10 minutes to read the instructions, gather the facts, and answer the questions" on that form. SSA, Request for Hearing by Administrative Law Judge, Form HA–501–U5. Last, as with the Appeals Council, SSA "regulations provide no notice that claimants must . . . raise

specific issues before" the ALJ "to preserve them for review
in federal court." *Sims*, 530 U. S., at 113 (opinion of O'Con-
nor, J.).

B

The parallels between ALJ and Appeals Council proceed-
ings are many, but the Commissioner correctly notes sev-
eral differences that may make ALJ hearings relatively
more adversarial. For one, ALJ hearings are typically
available as a matter of right, while Appeals Council review
is discretionary. Compare 20 CFR §404.957 with §404.967.
Most claimants thus submit no more than a one-page re-
quest for review to the Appeals Council before having their
request denied. Mandatory ALJ proceedings, by contrast,
present far more opportunities for claimants to press is-
sues, and the SSA consequently relies more heavily on
those proceedings to "conduc[t the agency's] principal and
most thorough investigation of . . . disability claim[s]."
Brief for Respondent 35–36. Additionally, before every
hearing, the SSA mails claimants a "notice of hearing" that
includes logistical information and lists the "[t]he specific
issues to be decided in [the] case." §404.938(b)(1). Claim-
ants must notify the ALJ in writing if they "object to the
issues to be decided at the hearing."[4] §404.939. Similarly,
SSA conflict-of-interest regulations instruct claimants to
"notify the [ALJ] at [the] earliest opportunity" if they "ob-
ject to the [ALJ] who will conduct [their] hearing."
§404.940.

Even accepting that ALJ proceedings may be compara-
tively more adversarial than Appeals Council proceedings,
the question nonetheless remains whether the ALJ pro-
ceedings at issue here were adversarial enough to support

---

[4] As discussed above, see *supra,* at 5, the Commissioner "do[es] not ar-
gue that these regulations themselves impose a forfeiture rule that ap-
plies here." Brief for Respondent 35, n. 2.

the "analogy to judicial proceedings" that undergirds judi-
cially created issue-exhaustion requirements. *Sims*, 530
U. S., at 112 (plurality opinion). In the specific context of
petitioners' Appointments Clause challenges, two addi-
tional considerations tip the scales decidedly against impos-
ing an issue-exhaustion requirement.[5]

1

First, this Court has often observed that agency adjudi-
cations are generally ill suited to address structural consti-
tutional challenges, which usually fall outside the adjudica-
tors' areas of technical expertise. See, *e.g., Free Enterprise
Fund* v. *Public Company Accounting Oversight Bd.*, 561
U. S. 477, 491 (2010); *Califano* v. *Sanders*, 430 U. S. 99, 109
(1977); *Weinberger* v. *Salfi*, 422 U. S. 749, 765 (1975). As
such, it is sometimes appropriate for courts to entertain
constitutional challenges to statutes or other agency-wide
policies even when those challenges were not raised in ad-
ministrative proceedings.[6] See, *e.g., Mathews* v. *Diaz*, 426
U. S. 67, 76–77 (1976). Thus, this Court observed in
*Mathews* v. *Eldridge*, 424 U. S. 319 (1976), that, so long as
a Social Security claimant "had exhausted the full set of
available administrative review procedures" (as petitioners
did here), "failure to have raised his constitutional claim

——————
[5] Outside the context of Appointments Clause challenges, such as in
the sphere of routine objections to individual benefits determinations,
the scales might tip differently.

[6] Contrary to the Commissioner's assertion, *Richardson* v. *Perales*, 402
U. S. 389 (1971), has no bearing on whether an issue-exhaustion require-
ment is appropriate in these cases. In *Perales*, the Court rejected a claim-
ant's procedural due process challenge to the admissibility of an adverse
medical report, explaining (among other reasons) that "[a]lthough the
claimant complain[ed] of the lack of opportunity to cross-examine the re-
porting physicians, he did not take advantage of the opportunity" to sub-
poena the physicians. *Id.,* at 404. *Perales* thus stands for the uncontro-
versial (and irrelevant) proposition that a claimant is not denied due
process if he declines to take advantage of the adequate procedures avail-
able to him.

would not bar him from asserting it later in a district court."
*Id.*, at 329, n. 10.

Second, this Court has consistently recognized a futility
exception to exhaustion requirements. See, *e.g., Bethesda
Hospital Assn.* v. *Bowen*, 485 U. S. 399, 405–406 (1988);
*Montana Nat. Bank of Billings* v. *Yellowstone County*, 276
U. S. 499, 505 (1928). It makes little sense to require liti-
gants to present claims to adjudicators who are powerless
to grant the relief requested. Such a vain exercise will
rarely "protec[t] administrative agency authority" or "pro-
mot[e] judicial efficiency." *McCarthy*, 503 U. S., at 145.

Both considerations apply fully here: Petitioners assert
purely constitutional claims about which SSA ALJs have no
special expertise and for which they can provide no relief.
Relying on *L. A. Tucker Truck Lines*, the Commissioner ar-
gues that it nevertheless would have been fruitful for peti-
tioners to raise Appointments Clause challenges in their
ALJ hearings because "'[r]epetition of the objection' in mul-
tiple cases could have led 'to a change of policy.'" Brief for
Respondent 45 (quoting *L. A. Tucker Truck Lines*, 344 U. S.,
at 37). But the Commissioner misses a key distinction: In
*L. A. Tucker Truck Lines*, the aggrieved litigant had the op-
portunity to object to the relevant method of appointment
before the full Interstate Commerce Commission itself. *Id.*,
at 34. Repetition of such an objection in cases before the
full Commission might have persuaded it to change its "pre-
determined policy on th[e] subject." *Id.,* at 37. Here, by
contrast, the SSA's administrative review scheme at no
point afforded petitioners access to the Commissioner, the
one person who could remedy their Appointments Clause
challenges. Nor were the ALJs capable of remedying any
defects in their own appointments. After all, there were no
Commissioner-appointed ALJs to whom objecting claim-
ants' cases could be transferred, and the ALJs could not
very well have reappointed themselves.

Internal SSA guidance confirms as much. On January

30, 2018, soon after this Court granted certiorari in *Lucia*, the agency issued an "emergency message" to ALJs advising them that "adjudicators may see challenges . . . related to the constitutionality of the appointment of SSA's ALJs." SSA, EM–18003: Important Information Regarding Possible Challenges to the Appointment of Administrative Law Judges in SSA's Administrative Process, p. 2. The agency warned ALJs that, because the "SSA lacks the authority to finally decide constitutional issues such as these," they should "not discuss or make any findings related to the Appointments Clause issue on the record." *Ibid.* Instead, ALJs were directed to acknowledge any Appointments Clause objections with standardized language explaining that they "'d[id] not have the authority to rule on that challenge.'" *Ibid.* The SSA reiterated these instructions in a second emergency message issued shortly after *Lucia* was decided.[7] See SSA, EM–18003 REV: Important Information Regarding Possible Challenges to the Appointment of Administrative Law Judges in SSA's Administrative Process—UPDATE, pp. 1–2 (June 25, 2018). It was not until March 2019 that the Acting Commissioner finally instructed the Appeals Council on how to handle preratification Appointments Clause challenges. See 84 Fed. Reg. 9582; *supra,* at 3.

2

Taking a somewhat different tack, the Commissioner contends that petitioners are not entitled to new hearings before constitutionally appointed ALJs because they failed

——————

[7] Although the agency issued its internal guidance several months after petitioners' ALJ hearings concluded, there is no indication that the ALJs would or could have adjudicated an Appointments Clause challenge at any time. Moreover, as a practical matter, the agency's emergency messages belie the Commissioner's suggestion that the SSA would have changed course if only it had been "'put on notice of the accumulating risk of wholesale reversals.'" Brief for Respondent 45 (quoting *L. A. Tucker Truck Lines*, 344 U. S., at 37).

to make "timely challenge[s]" to their adjudicators' appointments. *Ryder* v. *United States*, 515 U. S. 177, 182 (1995); *Lucia*, 585 U. S., at ___ (slip op., at 12) (quoting *Ryder*). That argument, however, presumes what the Commissioner has failed to prove: that petitioners' challenges are, in fact, untimely. The Commissioner relies on *Ryder* and *Lucia*, but neither of those decisions had occasion to opine on what would constitute a "timely" objection in an administrative review scheme like the SSA's. *Ryder* involved an appeal from a Coast Guard court-martial, 515 U. S., at 179, an adversarial proceeding in which traditional forfeiture rules apply, see *United States* v. *Gladue*, 67 M. J. 311, 313 (C. A. Armed Forces 2009). *Lucia*, meanwhile, arose from proceedings before the Securities and Exchange Commission, 585 U. S., at ___–___ (slip op., at 2–3), in which a statutory issue-exhaustion requirement applies, see 15 U. S. C. §78y(c)(1). Where, as here, claimants are not required to exhaust certain issues in administrative proceedings to preserve them for judicial review, claimants who raise those issues for the first time in federal court are not untimely in doing so.

\*　　\*　　\*

Taken together, the inquisitorial features of SSA ALJ proceedings, the constitutional character of petitioners' claims, and the unavailability of any remedy make clear that "adversarial development" of the Appointments Clause issue "simply [did] not exist" (and could not exist) in petitioners' ALJ proceedings. *Sims*, 530 U. S., at 112 (plurality opinion). The Courts of Appeals therefore erred in imposing an issue-exhaustion requirement on petitioners' Appointments Clause claims. The judgments of the Eighth and Tenth Circuits are reversed, and the cases are remanded for further proceedings consistent with this opinion.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

_____

Nos. 19–1442 and 20–105

_____

WILLIE EARL CARR, ET AL., PETITIONERS
19–1442                    _v._
ANDREW M. SAUL, COMMISSIONER OF
SOCIAL SECURITY

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE TENTH CIRCUIT


JOHN J. DAVIS, ET AL., PETITIONERS
20–105                    _v._
ANDREW M. SAUL, COMMISSIONER OF
SOCIAL SECURITY

THOMAS HILLIARD, PETITIONER
_v._
ANDREW M. SAUL, COMMISSIONER OF
SOCIAL SECURITY

ON WRITS OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE EIGHTH CIRCUIT

[April 22, 2021]

JUSTICE THOMAS, with whom JUSTICE GORSUCH and JUSTICE BARRETT join, concurring in part and concurring in the judgment.

I join Parts I, II–A, and II–B–2 of the opinion of the Court, which correctly explain that the nonadversarial nature of an agency proceeding generally gives good reason to refrain from creating an issue-exhaustion requirement. See _Sims_ v. _Apfel_, 530 U. S. 103, 109–110 (2000). Proceedings before an administrative law judge (ALJ) of the Social Security Administration are plainly nonadversarial: The regulations

assure claimants that the agency will "conduct the admin-
istrative review process in an informal, non-adversarial
manner." 20 CFR §404.900(b) (2020). ALJs can raise new
issues *sua sponte.* §§404.944, 404.946. Hearings are so in-
formal that lawyers, briefs, and even attendance are often
optional. §§404.948–404.950. And should an ALJ err, the
Appeals Council may review cases to correct anything from
"error[s] of law" to "broad policy or procedural issue[s] that
may affect the general public interest." §404.970(a). This
decidedly pro-claimant, inquisitorial process is quite unlike
an adversarial suit in which parties are expected to iden-
tify, argue, and preserve all issues.

To be sure, a few regulatory provisions direct claimants
to advocate on their own behalf by objecting to problems,
including if the agency misidentifies issues before the hear-
ing or if the ALJ is "prejudiced or partial." §§404.938–
404.940. But these unsurprising reminders that a claimant
should not sit idly on the sidelines hardly demand that the
penalty for overlooking an argument is forfeiture. On the
contrary, such a permanent consequence would be surpris-
ing in light of the flexible, "informal" mechanisms that un-
dergird the entire agency review process. §404.900(b); see
also *Sims,* 530 U. S., at 110 (plurality opinion) ("The differ-
ences between courts and agencies are nowhere more pro-
nounced than in Social Security proceedings").

Because these proceedings bear little resemblance to ad-
versarial litigation, I agree with the Court that there is no
need for an exhaustion rule. I would end the analysis there.

# SUPREME COURT OF THE UNITED STATES

————

Nos. 19–1442 and 20–105

————

WILLIE EARL CARR, ET AL., PETITIONERS
19–1442          *v.*
ANDREW M. SAUL, COMMISSIONER OF
SOCIAL SECURITY

*ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE TENTH CIRCUIT*

JOHN J. DAVIS, ET AL., PETITIONERS
20–105          *v.*
ANDREW M. SAUL, COMMISSIONER OF
SOCIAL SECURITY

THOMAS HILLIARD, PETITIONER
*v.*
ANDREW M. SAUL, COMMISSIONER OF
SOCIAL SECURITY

*ON WRITS OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE EIGHTH CIRCUIT*

[April 22, 2021]

JUSTICE BREYER, concurring in part and concurring in the judgment.

I continue to believe that, "[u]nder ordinary principles of administrative law a reviewing court will not consider arguments that a party failed to raise in timely fashion before an administrative agency." *Sims* v. *Apfel*, 530 U. S. 103, 114 (2000) (BREYER, J., dissenting). I also adhere to my prior view that, in the particular context of the Social Security Administration, a claimant "ordinarily must raise all

relevant issues before the ALJ" and that the "nonadversarial nature" of the agency's procedures is generally irrelevant to whether the ordinary rule requiring issue exhaustion ought to apply. *Id.*, at 117. Here, however, I agree with the Court that the Appointments Clause challenges at issue fall into the well-established exceptions for constitutional and futile claims. See *ante*, at 9–11; see also *Sims*, 530 U. S., at 115 (BREYER, J., dissenting); *Woodford* v. *Ngo*, 548 U. S. 81, 103 (2006) (BREYER, J., concurring in judgment); *Ross* v. *Blake*, 578 U. S. 632, 649 (2016) (BREYER, J., concurring in part) (recognizing these traditional exceptions). I therefore join Parts I, II–B–1, and II–B–2 of the Court's opinion and concur in the Court's judgment.