**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

LYDIA GALVEZ,

*Plaintiff - Appellee*,

v.

FRANK BISIGNANO,
Commissioner of Social Security,

*Defendant - Appellant*.

No. 24-3569

D.C. No.
1:23-cv-03143-EFS

OPINION

Appeal from the United States District Court
for the Eastern District of Washington
Edward F. Shea, District Judge, Presiding

Argued and Submitted May 20, 2025
Seattle, Washington

Filed September 10, 2025

Before: Ronald M. Gould, Richard C. Tallman, and
Morgan B. Christen, Circuit Judges.

Opinion by Judge Christen

# SUMMARY[*]

## Social Security

The panel vacated the district court's order remanding to the Social Security Administration Lydia Galvez's claim for disability insurance benefits for the period from 2008 to 2018 on the ground that the agency's decision denying benefits was tainted with a violation of the Appointments Clause.

The district court held that the agency's decision denying Galvez benefits was tainted with an Appointments Clause violation because the decision relied, in part, on a prior opinion entered by an Administrative Law Judge (ALJ) who had not been properly appointed.

The panel held that the new ALJ's opinion, which incorporated part of a prior, tainted opinion, was not tainted by an Appointments Clause violation. Some similar, or even identical, text in a subsequent decision is not automatically disqualifying. A district court's inquiry should focus on whether the new decision reflects that the newly assigned ALJ provided the independent assessment required by *Cody v. Kijakazi*, 48 F.4th 956 (9th Cir. 2022). After reviewing the opinion entered on remand by a newly assigned ALJ who held additional hearings and heard additional testimony, the panel concluded that the opinion reflected the newly assigned ALJ's independent view of the case. Accordingly, the panel vacated the district court's order and remanded to

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

the district court for consideration of the merits of Galvez's claim.

## COUNSEL

D. James Tree (argued), Tree Law Office, Yakima, Washington, for Plaintiff-Appellee.

Sonia Carson (argued), Daniel Aguilar, and Joshua M. Salzman, Attorneys, Appellate Staff; Brian M. Boynton, Principal Deputy Assistant Attorney General; Civil Division, United States Department of Justice, Washington, D.C.; Asim H. Modi, Special Assistant United States Attorney; Joseph J. Langkamer, Assistant Regional Counsel; Office of the General Counsel, Office of Program Litigation, Social Security Administration, Baltimore, Maryland; Brian M. Donovan, Assistant United States Attorney; Vanessa R. Waldref, United States Attorney; Office of the United States Attorney, United States Department of Justice, Spokane, Washington; for Defendant-Appellant.

# OPINION

CHRISTEN, Circuit Judge:

The Commissioner of the Social Security Administration appeals a district court order remanding Lydia Galvez's claim for Social Security disability insurance benefits for the period from 2008 to 2018.  The court held that the agency's decision denying Galvez benefits was tainted with an Appointments Clause violation because the decision relied, in part, on a prior opinion entered by an Administrative Law Judge who had not been properly appointed.

We have previously decided that the remedy for a Social Security adjudication issued in violation of the Appointments Clause is a de novo hearing held before a different and properly appointed Administrative Law Judge (ALJ).  *Cody v. Kijakazi*, 48 F.4th 956, 961–63 (9th Cir. 2022).  This case presents a related question of first impression: is a new ALJ's opinion tainted by an Appointments Clause violation if it incorporates part of the prior, tainted opinion?  After closely reviewing the opinion entered on remand by a newly assigned ALJ who held additional hearings and heard additional testimony, we conclude that it reflects the newly assigned judge's independent view of the case.  Accordingly, we vacate the district court's order and remand to the district court for consideration of the merits of Galvez's claim.

## I

## A

Because this case arises in the wake of recent case law addressing violations of the Appointments Clause, we first describe the legal landscape.

In *Lucia v. Securities and Exchange Commission*, the Supreme Court held that an ALJ who presided over a Securities and Exchange Commission enforcement proceeding qualified as an officer subject to the Appointments Clause of the United States Constitution. 585 U.S. 237, 251 (2018). Because the ALJ had been appointed by agency staff rather than by the Commission directly, the Court concluded the ALJ had adjudicated Lucia's case "without the kind of appointment the [Appointments] Clause requires." *Id.* The Court went on to hold that the "'appropriate' remedy for an adjudication tainted with an appointments violation" is a new hearing before a different, properly appointed official. *Id.* (quoting *Ryder v. United States*, 515 U.S. 177, 183 (1995)).

In 2018, the Acting Commissioner of the Social Security Administration responded to *Lucia* by preemptively ratifying the appointments of all Social Security Administration ALJs and approving "those appointments as her own." SSR 19-1p, 84 Fed. Reg. 9582, 9583 (Mar. 15, 2019). The Acting Commissioner anticipated challenges to the ALJs' pre-ratification decisions, and in 2019 the agency announced that if a claimant timely raised an Appointments Clause challenge to the agency, it would "either remand the case to an ALJ other than the ALJ who issued the decision under review, or issue its own new decision about the claim covering the period before the date of the ALJ's decision." *Id.*

The Supreme Court subsequently invalidated the agency's requirement that claimants exhaust their Appointments Clause challenges at the administrative level in *Carr v. Saul*, 593 U.S. 83, 88–96 (2021). In doing so, the Supreme Court observed that ALJs are not "capable of remedying any defects in their own appointments." *Id.* at 94.

Thus, the Court held that claimants may raise Appointments Clause challenges for the first time before the district court. *Id.* at 95.

In *Cody v. Kijakazi*, we considered the appropriate remedy where an improperly appointed Social Security Administration ALJ denied a claim for disability benefits. Cody's claim was initially denied in 2017. 48 F.4th at 958–59. He appealed in 2018 shortly after the Supreme Court decided *Lucia*, but he did not raise an Appointments Clause challenge. *Id.* at 959. On a different issue, the district court remanded Cody's claim for a new hearing and directed the ALJ to consider certain evidence. *Id.* By the time the case was back before the original ALJ, the Acting Commissioner had ratified the ALJ's appointment and, as the district court directed, the ALJ held a new hearing. *Id.* The ALJ denied Cody's claim for a second time in 2019, and Cody appealed again in 2020. This time, he raised an Appointments Clause challenge. *Id.* The district court denied Cody's Appointments Clause challenge on the basis that the original ALJ had been properly appointed by the time she entered her 2019 decision. *Id.* at 960. Cody then appealed to our court. *Id.*

The government argued on appeal that Cody's Appointments Clause challenge was untimely because he failed to raise it in his first appeal to the district court. *Id.* at 962. We disagreed, explaining that Cody's second appeal was his first opportunity to challenge the 2019 decision, and therefore, his first chance to argue that the new decision was tainted because it incorporated some of the 2017 decision. *Id.* On the merits, we reasoned that remand for a new hearing before the same ALJ did not cure the taint, even though the Acting Commissioner had since ratified the ALJ's appointment. *Id.* at 962–63. Relying on *Lucia*, we

held that only upon "reassignment to a new, independent ALJ [would] Cody receive a fresh look and 'the new hearing to which [he] is entitled.'" *Id.* at 962 (quoting *Lucia*, 585 U.S. at 251). We vacated the 2019 decision and remanded for an independent adjudication. *Id.* at 963. In the years since we issued *Cody*, district courts have disagreed about how to apply its holding.

**B**

Turning to the facts before us, Lydia Galvez filed for Social Security disability insurance benefits and supplemental security income in 2011. Galvez claimed that she had been disabled since 2008 due to a variety of medical conditions, including fibromyalgia, chronic right shoulder injuries, and chronic depression, which left her unable to perform her prior work as a Certified Nurse Assistant. ALJ Kennedy held a hearing in 2013 and concluded that Galvez was not disabled because she retained the Residual Functional Capacity (RFC) to perform light work. Galvez appealed that decision to the district court and the district court remanded to the agency in 2017 to further evaluate Galvez's fibromyalgia diagnosis. The court held that the ALJ failed to consider the correct diagnostic criteria to determine whether Galvez's fibromyalgia was a severe medically determinable impairment. The district court discussed the inconsistencies between the opinion of Dr. Wendy Eider, an examining rheumatologist who had prepared a report finding multiple tender points consistent with fibromyalgia, and the ALJ's assessment of Galvez's fibromyalgia. The court concluded that remand was appropriate because if the ALJ concluded that Galvez's fibromyalgia was a severe impairment, then a reweighing of medical evidence and new RFC analysis would be necessary.

On remand, Galvez's case returned to ALJ Kennedy after his appointment had been ratified in 2018. ALJ Kennedy held another hearing and again ruled that Galvez was not disabled. In his 2019 decision, ALJ Kennedy "adopt[ed] and incorporate[ed]" his 2013 decision "to the extent not inconsistent with the direction of the District Court." As the district court directed, ALJ Kennedy assessed whether Galvez met the diagnostic criteria for fibromyalgia and found that while Galvez had a severe impairment of fibromyalgia, she still had the RFC to perform light work. ALJ Kennedy weighed the four new written expert opinions added to the record on remand, but he did not discuss Dr. Eider's earlier opinion.

After Galvez appealed again, the parties agreed to a remand and in a stipulated order, the district court directed the agency to conduct a de novo hearing, reconsider the medical evidence, and weigh Dr. Eider's opinion. The order also directed the agency to reweigh the other expert opinions and issue a new decision. On remand, the case was assigned to a different ALJ, ALJ Meyers. The Appeals Council explained its view that the 2019 decision did "not entirely comply with the court's remand order to further evaluate the claimant's fibromyalgia, as reweighing of the medical evidence of record was not complete."

ALJ Meyers held a hearing in January 2021 and concluded that on January 1, 2019, Galvez became disabled due to a new and severe left shoulder injury that was not part of Galvez's medical history when ALJ Kennedy entered his 2019 decision. Regarding Galvez's claim for disability for the period from 2008 through December 31, 2018, ALJ Meyers concluded that Galvez was not disabled because she retained the residual capacity to perform light work. Galvez appealed this portion of ALJ Meyers's decision. The

Appeals Council affirmed the ruling that Galvez became disabled on January 1, 2019, but remanded to ALJ Meyers to consider whether Galvez was disabled from 2008 to 2018. The Council instructed ALJ Meyers to further clarify the limiting impact of Galvez's "severe" fibromyalgia on her RFC and to address the report of Debra Titus, ARNP, which expressed Titus's opinion that Galvez could not meet the demands of full-time sedentary work. This conflicted with ALJ Meyers's earlier conclusion regarding Galvez's RFC.

In June 2022 and November 2022, ALJ Meyers convened two additional evidentiary hearings. At the June hearing, a new vocational expert testified, but Galvez was not present. ALJ Meyers continued the hearing. At the hearing held in November, Galvez and another new vocational expert testified. ALJ Meyers issued a ruling in December 2022 that again concluded Galvez was not disabled during the period from November 16, 2008 through December 31, 2018 and Galvez appealed a fourth time.

## C

Back in the district court, Galvez advanced several arguments, including that ALJ Meyers erred by relying on portions of a decision tainted with an Appointments Clause violation. The district court agreed. Citing *Cody*, the court first determined that ALJ Kennedy's 2019 decision was tainted with the original Appointments Clause violation because ALJ Kennedy first heard the case in 2013 before his appointment had been ratified, and his 2019 opinion incorporated his 2013 decision. The court next evaluated ALJ Meyers's 2022 decision and decided that it was also tainted. The court reasoned that the 2022 decision was tainted because it adopted and incorporated several pages of findings from ALJ Kennedy's 21-page 2019 decision,

particularly with respect to the evaluation of various expert opinions addressing Galvez's physical impairments. The district court remanded Galvez's claim to the agency for a de novo hearing with a different ALJ. The government timely appealed.

## II

We have jurisdiction pursuant to 28 U.S.C. § 1291. We review de novo the legal conclusions in a district court's decision on a denial of Social Security disability benefits. *Cody*, 48 F.4th at 960 (citation omitted).

## III

The government argues the district court erred when it ruled that ALJ Meyers's 2022 decision remains tainted because it incorporated portions of ALJ Kennedy's 2019 decision, which incorporated the tainted 2013 decision by reference. The government does not challenge the district court's determination that the 2013 and 2019 decisions were issued in violation of the Appointments Clause.

We first observe that, although the district court relied on *Cody* to rule that ALJ Meyers's 2022 decision was not independent of the 2019 decision, *Cody* addressed a readily distinguishable scenario. In *Cody*, the *same* ALJ who had adjudicated a claim without a constitutionally compliant appointment, but whose appointment had since been ratified, issued a decision on remand that incorporated, verbatim, key portions of the opinion she issued before her appointment was ratified. *Id.* at 962–63. Here, the challenged decision was issued by an ALJ who was assigned to Galvez's case on remand after an Appointments Clause violation. There is no challenge to ALJ Meyers's appointment, and ALJ Meyers conducted additional hearings and received additional

evidence.  Thus, this case presents the opportunity to further consider how to evaluate whether a *different*, newly appointed ALJ took an "independent look" at a claim on remand sufficient to cure an Appointments Clause violation.

The parties advance very divergent positions.  The government argues that *Lucia* requires only a new hearing by a different ALJ.  As long as that occurs, the government's view is that the Appointments Clause violation is remedied. Galvez counters that this is not enough.  Even when there has been a new hearing with a different ALJ, Galvez argues that if any text from a tainted opinion appears in the opinion issued on remand, the subsequent decision remains tainted.

As noted, district courts in our circuit have taken markedly different approaches when applying *Cody* to similar sets of facts.  In at least four cases, including Galvez's, district courts have concluded that subsequent decisions issued by newly assigned ALJs were not sufficiently independent.  Relying on *Cody*'s discussion that the decision issued on remand in that case "copied verbatim" language from the tainted decision, 48 F.4th at 962, some district courts have concluded that if a new decision incorporates parts of the previous decision or uses similar language, that decision is tainted with the prior Appointments Clause violation. *Brian B. v. Comm'r of Soc. Sec.*, No. 3:23-CV-06075-TLF, 2024 WL 4356249, at *2–3 (W.D. Wash. Oct. 1, 2024); *Navarre L. v. Comm'r of Soc. Sec.*, No. 3:24-CV-5008-DWC, 2024 WL 3409381, at *3 (W.D. Wash. July 15, 2024); *Lydia G. v. O'Malley*, No. 1:23-CV-03143-EFS, 2024 WL 1556358, at *3 (E.D. Wash. Apr. 10, 2024); *Jennifer H. v. Comm'r of Soc. Sec.*, No. 2:22-CV-1845-DWC, 2023 WL 6571418, at *3–4 (W.D. Wash. Oct. 10, 2023).  But in at least two cases, district courts have concluded that a decision entered by a different ALJ,

coupled with a new hearing, fresh testimony, the opportunity to present new evidence, or the opportunity to cross-examine witnesses, resulted in an independent decision even though the new decision reached the same conclusion and contained some of the text from the original decision. *James M. v. Comm'r of Soc. Sec.*, No. C23-5067-SKV, 2023 WL 6823198, at *9–10 (W.D. Wash. Sep. 20, 2023), *aff'd on other grounds sub nom., McPhetridge v. Colvin*, No. 23-3604, 2024 WL 5040993 (9th Cir. Dec. 9, 2024); *Kimberly D. v. Comm'r of Soc. Sec.*, No. C22-5588-BAT, 2023 WL 3001405, at *2 (W.D. Wash. Apr. 19, 2023).

Striking a middle ground between the two positions put forth by the parties, we largely agree with the approach taken by the latter group of district courts. Some similar, or even identical, text in a subsequent decision is not automatically disqualifying. Rather, a district court's inquiry should focus on whether the new decision as a whole reflects that the newly assigned ALJ provided the independent assessment that *Cody* requires. 48 F.4th at 963. As we explain, in some cases, the process afforded to the claimant on remand will be an important consideration. Here, we conclude that "in spite of similarities and, in places, identical language" ALJ Meyers's 2022 decision satisfies *Cody*. *James M.*, 2023 WL 6823198, at *9.

## A

To determine what constitutes an appropriate remedy for an adjudication tainted by an Appointments Clause violation, we begin with *Lucia*. *Lucia* concluded that remand to a new ALJ is necessary to vindicate violations of the Appointments Clause because, without a different ALJ, remand would give the original judge "no reason to think [she] did anything wrong on the merits" and thus leave little

possibility of a different result in a second hearing. 585 U.S. at 251, n.5. The Supreme Court explained that if ALJs were free to reissue decisions entered pursuant to improper appointments by merely reissuing them after follow-on hearings, litigants would not be incentivized to pursue Appointments Clause challenges and violations of the Clause could go unchecked. *Id.* In *Cody*, our court emphasized that "[a]n Appointments Clause violation is . . . no mere technicality or quaint formality—it weakens our constitutional design." 48 F.4th at 960. This is because, as *Cody* explained, the proper appointment of executive branch officials connects them to the authority of the President and therefore connects those officials to the President's accountability to the electorate. *Id.* *Cody* re-iterated the importance of incentivizing claimants to raise Appointments Clause challenges by providing a real remedy. *Id.* at 960–61.

This rationale from controlling precedent defeats the government's strenuous argument that courts need look no further than whether a second decision was issued by a newly assigned and properly appointed ALJ to determine whether an Appointments Clause violation has been remedied. A different ALJ is necessary to cure such violations, but it is not enough. *Id.* at 961–62. Litigants whose claims are denied in adjudications issued in violation of the Appointments Clause are entitled to a "fresh look" and an independent decision by a properly appointed ALJ. *Id.* at 962.

That said, we are unpersuaded by Galvez's argument, which advances a rule that requires redundant effort that may be unnecessary in many cases. Our view is closer to the one expressed by the Sixth Circuit in *Jones Bros., Inc. v. Secretary of Labor, Mine Safety & Health Administration*,

68 F.4th 289, 303 (6th Cir. 2023). *Jones Brothers* considered a challenge to the independence of a decision entered on remand by a newly assigned ALJ after an Appointments Clause violation. *Id.* at 294–95. There, one party argued that the subsequent decision should be deemed tainted because the newly appointed ALJ had read the first decision, and the new decision was consistent with the one issued by the improperly appointed ALJ. *Id.* at 302–03. The Sixth Circuit held that "an independent evaluation of the merits does not require an ALJ to ignore all past proceedings." *Id.* at 303 (citation omitted). A contrary rule, the court reasoned, would create "cumbersome, repetitive processes throughout the executive branch simply to produce findings and orders that would often be identical the second time around." *Id.*

In our view, it is inevitable that new decisions issued on remand after Appointments Clause violations in Social Security disability cases will overlap with the prior decisions to some degree. The pre-remand procedural histories of these cases will not vary, and the second ALJ will undoubtedly consider the same treatment records and expert opinions that existed pre-remand. Both ALJs will consider the direct and cross-examination testimony offered at hearings held by the prior ALJ. It is not a red flag that two ALJs may find similar parts of the record to be relevant or even dispositive, s*ee id.*, and we see little utility in requiring ALJs to re-write or re-phrase portions of a prior decision solely to demonstrate their independence. Therefore, we reject Galvez's position that if *any* text from a tainted opinion appears in the subsequent opinion, the court should presume that an earlier Appointments Clause violation has not been remedied.

To assess the independence of a decision issued under the circumstances discussed here, district courts should first verify that the new decision complies with *Lucia*'s requirement that it be issued by a different ALJ. 585 U.S. at 251. Second, a de novo hearing on remand is required because this will allow the opportunity for the newly assigned ALJ to independently consider the credibility of the claimant. In most cases, this will require providing the claimant with an opportunity to appear and provide additional testimony.[1] In some cases—like this one—a newly assigned ALJ may have been directed to convene a new hearing for the purpose of considering or reconsidering specific evidence, including previously admitted evidence. The specific procedures necessary to facilitate an independent review will vary based on the posture of each case and the subject matter. We do not suggest that it is necessary for the parties to recreate the evidentiary record on remand.

Where new evidence is admitted, a district court's review should consider the extent to which the process on remand afforded an opportunity for the parties to present or cross-examine additional witnesses, or to argue the significance of the new evidence. District courts should also consider whether the transcript of any de novo hearing shows that the newly assigned ALJ was engaged in the hearing by demonstrating familiarity with the record or asking questions of her own.

---

[1] The exception may be cases in which a video recording of the claimant's testimony is available, or if the claimant waives the opportunity to appear and present testimony. *See* 20 C.F.R. § 404.948(b).

Of course, consistent with *Cody*, district courts must be alert to similar or identical language in the subsequent opinion that may signal a lack of independence. *See* 48 F.4th at 962. Where a side-by-side comparison shows that the new opinion adopted some parts from the original, district courts must analyze the passages carefully. Passages that recite uncontested facts, such as a claimant's employment or educational history, are not likely to bear significantly on independence. The same may be true of summaries of witness testimony or even medical chronologies, particularly if they pertain to issues that were not central to the parties' dispute. The focus must be on the opinion as a whole, and whether it demonstrates that a petitioner received the "fresh look" that our precedent requires.

## B

Applying this framework to Galvez's case, we conclude that ALJ Meyers's 2022 decision was independent. *Id.* First, ALJ Meyers was new to this case when it was remanded in 2021, satisfying the first step of this analysis. Second, consistent with directions issued by the district court and the Appeals Council, ALJ Meyers held new hearings in 2021 and in 2022. Galvez testified at two of these hearings, new vocational experts testified at all three hearings, and the transcripts show that ALJ Meyers asked questions regarding Galvez's part-time work at a motel and her medical history. Galvez had the opportunity to present new evidence on remand, and ALJ Meyers had an opportunity to hear Galvez testify and to evaluate her credibility for himself. As is often the case in Social Security disability determinations, Galvez's credibility was an important part of assessing the extent to which her medically determinable impairments impede her RFC. *James M.*, 2023 WL 6823198, at *10–11; *cf. Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090,

1100 (9th Cir. 2014) (noting the importance of a hearing officer's assessment of credibility and fact-finding role in ensuring consistent and fair Social Security disability determinations). The new process afforded to Galvez, and ALJ Meyers's engagement in it, strongly indicate that ALJ Meyers took a fresh look at this claim.

While ALJ Meyers ultimately agreed with ALJ Kennedy's determination that Galvez was not disabled from 2008 to 2018, ALJ Meyers's 2022 decision included new sections for material portions of the decision and reached different intermediate conclusions. Perhaps most probative of ALJ Meyers's independence is an entirely new and detailed summary of Galvez's physical impairments, including her spine complaints, orthopedic injuries, reports of pain, and fibromyalgia diagnosis. The new description of Galvez's physical impairments demonstrates that ALJ Meyers fully reviewed Galvez's entire medical history and treatment records. As ALJ Meyers noted, Galvez's "allegations primarily concern physical limitations" rather than mental impairments, and therefore, his thorough discussion of her physical impairments was critical.

In his 2022 opinion, ALJ Meyers evaluated two additional expert opinions, including the opinion of Debra Titus, ARNP, and Dr. Eider, that were not discussed in the 2019 decision. These witnesses opined on the impact that Galvez's fibromyalgia and pain levels had on her ability to work, which was central to Galvez's claims and a part of the analysis the Appeals Council and district court consistently found lacking. ALJ Meyers gave different weight to some of the expert opinions that he and ALJ Kennedy both addressed. For example, ALJ Meyers gave "some weight" to the June 2013 opinion by Heather McClure, ARNP, because he concluded that she was "not a medically

acceptable source." ALJ Kennedy, by contrast, had given McClure's opinion concerning Galvez's mental functions "significant weight" in light of the fact that she regularly treated Galvez. Similarly, ALJ Meyers gave "little weight" to the psychological evaluation prepared by Tae Im Moon, Ph.D., because this expert opinion appeared to be based on Dr. Moon's review of one medical record without an examination of Galvez. ALJ Kennedy, by contrast, gave this opinion "some weight" because it was "consistent with the medical evidence of record."

ALJ Meyers also arrived at a different RFC for Galvez than ALJ Kennedy. He determined that she could lift 10 pounds occasionally rather than 20 pounds, reached a different conclusion regarding the frequency with which she could do certain physical activities, and specifically noted her ability to have frequent contact with co-workers and the public, which the 2019 decision had not addressed. In all, the new analysis of Galvez's physical impairments, consideration of additional experts, new weights for particular experts, and a new RFC all show that ALJ Meyers applied his independent judgment to Galvez's claim.

Galvez points to several sections of ALJ Meyers's decision that, in her estimation, demonstrate he did not take an independent look at her claim. She provides a table in her brief comparing ALJ Meyers's 2022 decision to ALJ Kennedy's 2019 decision and argues that ALJ Meyers incorporated portions of the 2019 decision. These quoted sections fall into two general categories: (1) summaries of historic facts, including Galvez's work history and activities, mental impairments, and previous hearing testimony; and (2) summaries of expert opinions. After close review, we conclude that these sections do not show a "sufficient continuing taint arising from the [earlier] proceeding" such

that ALJ Meyers's decision was not an independent, de novo decision. *Jones Bros.*, 68 F.4th at 303 (citation omitted).

The summaries of Galvez's prior work history, activities, and mental impairments reflect historical facts that did not change after ALJ Kennedy's 2019 decision. In Galvez's case, these facts are not contested nor are they central to her primary complaint for disability insurance. Galvez's complaint is primarily focused on her physical limitations, not her mental health concerns. We hesitate to require ALJs to rewrite summaries of the historical record solely to demonstrate independence.[2]

ALJ Meyers adopted and incorporated several of ALJ Kennedy's summaries of expert opinions, and these portions of his opinion require a closer look. But as described, ALJ Meyers independently analyzed the weight afforded to each expert opinion and his assessment varied from ALJ Kennedy's for several experts. Where the ALJs did agree on the weight to be given to expert reports, disagreement would have been surprising. For example, both ALJs gave "no weight to . . . McClure's statements regarding pain as she did not conduct any physical examinations and relied solely on claimant's report of physical symptoms." And both ALJs gave "little weight" or "little to no weight" to opinions issued by experts who did not perform physical examinations or longitudinally review Galvez's conditions. *See* 20 C.F.R. § 404.1527(c)(1), (2) (requiring, for claims filed before

---

[2] This determination is context specific. For example, in a case where the claimant's chief complaint for disability is based on mental impairments, a verbatim recitation of a claimant's mental health history may indicate a lack of independent review. The inquiry should focus on whether the written decision reflects whether the ALJ applied her independent reasoning to the specific claim before her.

March 27, 2017, that generally, more weight must be given to examining physicians' opinions if they had a long-term treatment relationship with claimants).  While we leave the merits of Galvez's challenge to the district court, we note that the similar or even identical conclusions the two ALJs reached on these expert opinions do not establish that ALJ Meyers failed to independently consider Galvez's claim. *See Jones Bros.*, 68 F.4th at 303.

Having considered ALJ Meyers's 2022 opinion as a whole, the process afforded to Galvez on remand, and the extent to which the 2022 opinion reflects ALJ Meyers's independent reasons for reaching the conclusions he reached, we conclude that ALJ Meyers took the required fresh look at Galvez's claim.

We reverse the district court's conclusion that ALJ Meyers's 2022 decision was tainted with a continuing Appointments Clause violation.  We remand for the district court to consider Galvez's substantive challenges to ALJ Meyers's 2022 decision.

**REVERSED AND REMANDED.**