## UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

KRISTEN A. WESTLING,
     Appellant,

     v.

DEPARTMENT OF DEFENSE,
     Agency.

DOCKET NUMBER
DE-0432-18-0229-I-1

DATE: August 17, 2023

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

<u>Shaun Southworth</u>, Esquire, and <u>Ronica Scales</u>, Esquire, Atlanta, Georgia,
    for the appellant.

<u>John D. Norquist</u>, Fort Belvoir, Virginia, for the agency.

## BEFORE

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member

## FINAL ORDER

¶1     The agency has filed a petition for review of the initial decision that reversed the appellant's removal for unacceptable performance under 5 U.S.C. chapter 43 and found that she failed to prove her affirmative defenses of discrimination based on sex and disability, retaliation for equal employment

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

opportunity (EEO) activity, and reprisal for whistleblowing. Generally, we grant petitions such as this one only in the following circumstances: the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we GRANT IN PART and DENY IN PART the agency's petition for review. We REVERSE the initial decision's holding that the agency failed to prove that its revised performance standards were valid and instead FIND the revised standards valid. However, we still DO NOT SUSTAIN the appellant's removal, as we FIND that the agency failed to provide her with a reasonable opportunity to demonstrate acceptable performance under the revised and substantially different performance standards. We AFFIRM the findings of the initial decision concerning the appellant failing to prove her affirmative defenses.

## BACKGROUND

¶2 The appellant worked as a grade 12 Auditor for the agency's Defense Contract Audit Agency (DCAA). Initial Appeal File (IAF), Tab 8 at 19. In this position, the appellant performed audits on Government contractor proposals and provided information and analysis for audit reports. IAF, Tab 25 at 23-35, Tab 32, Hearing Testimony (HT) (testimony of K.H.).

¶3 For the period of July 1, 2016, through February 6, 2017, the agency rated the appellant's performance as unacceptable in two critical elements of her performance standards, Critical Element 4 (Communication and Organizational

Support) and Critical Element 5 (Working Relationships). IAF, Tab 25 at 11-12. Effective March 15, 2017, the agency placed the appellant on a 90-day performance improvement plan (PIP) due to her unacceptable performance. *Id.* at 16-20. The PIP notice identified the standard that the appellant needed to meet to achieve at least minimally successful performance in both critical elements, outlined how management would assist her, and warned that failure to improve to the minimally successful performance level in both critical elements could result in administrative action. *Id.*

¶4        On June 30, 2017, the agency advised the appellant that she successfully completed her PIP. *Id.* at 21-22. This memorandum stated in relevant part:

> Although you successfully completed the PIP at the overall Fully Successful level, your performance in each of the current Critical Job Elements: *Communication and Organizational Support and Working Relationships,* must not become unacceptable within a one-year period from the beginning of the PIP. If your performance becomes unacceptable within the one-year period, management may proceed with a proposal to remove you from Federal service without another PIP. Note that your performance in the future will be evaluated under the revised Performance Standards that became effective on April 1, 2017, and which have been provided to you. Under those revised standards, any performance below the Fully Successful level is considered to be unacceptable.

*Id.* (emphasis in original). As a result, the performance standards that the appellant was held to prior to and during the PIP were no longer in effect after the PIP concluded.

¶5        On January 23, 2018, the agency advised the appellant that she was performing at an unacceptable level in Critical Element 5. *Id.* at 36-37. On February 13, 2018, the agency proposed the appellant's removal for unacceptable performance under 5 U.S.C. chapter 43, alleging that her performance on Critical Element 5 of the revised standards was unacceptable from June 14 through December 15, 2017. *Id.* at 38-42. After the appellant's reply to the proposal, the

agency removed her, effective April 9, 2018.  IAF, Tab 18 at 10-28, Tab 25 at 43-46.

¶6        The appellant filed this Board appeal contesting her removal, along with raising the affirmative defenses of discrimination based on sex and disability, retaliation for EEO activity, reprisal for whistleblowing, and harmful procedural error.  IAF, Tab 1, Tab 27 at 2.  After holding a hearing, HT, the administrative judge issued an initial decision reversing the appellant's removal, IAF, Tab 34, Initial Decision (ID).  Specifically, the administrative judge found that the agency did not meet its burden of proving that it applied a valid performance standard to the appellant.  ID at 5-12.  The administrative judge further determined that the appellant did not meet her burden of proving any of her affirmative defenses.[2]  ID at 12-27.  The agency's petition for review of the initial decision followed.  Petition for Review (PFR) File, Tab 1.[3]  The appellant did not respond to the agency's petition for review, nor did she file a cross petition for review.

---

[2] The administrative judge did not address the appellant's claim of harmful procedural error, as he reversed the removal on other grounds.  ID at 12 n.6. The appellant does not raise harmful procedural error on review, and we find no reason to now address this affirmative defense.  *See Van Prichard v. Department of Defense*, 117 M.S.P.R. 88, ¶¶ 1, 25 (2011) (finding no error in the administrative judge's failure to address the appellant's harmful procedural error affirmative defense when the appellant's removal was reversed on other grounds), *aff'd*, 484 F. App'x 489 (Fed. Cir. 2012).

[3] After the record closed on review, the agency requested leave to file a motion challenging, for the first time in this case, the administrative judge's authority to adjudicate the appeal under the Appointments Clause of the U.S. Constitution.  PFR File, Tab 5 at 3.  In support, the agency argued that in *Carr v. Saul*, 593 U.S. ___, 141 S. Ct. 1352 (2021), which was decided after the record closed on review, the U.S. Supreme Court held that litigants are not required to exhaust Appointments Clause claims before administrative judges in order to assert those claims at the "appellate level."  PFR File, Tab 5 at 3.  In *McClenning v. Department of the Army*, 2022 MSPB 3, we found that the absence of an issue-exhaustion requirement in nonadversarial Social Security Administration disability benefits proceedings identified in *Carr* did not control in the context of Board appeals, where Appointments Clause claims must be raised prior to the close of the record before the administrative judge.  *Id.*, ¶¶ 8-22, 25.  Further, nothing prevented the agency from raising a timely Appointments Clause claim on appeal.  We therefore deny the agency's request due to the reasons stated in *McClenning*, and the agency's failure to show that its argument is new and material and

**ANALYSIS**

¶7     To prevail in a Board appeal of a performance-based action under 5 U.S.C. chapter 43, an agency must prove by substantial evidence[4] that: (1) the Office of Personnel Management (OPM) approved its performance appraisal system and any significant changes thereto; (2) the agency communicated to the employee the performance standards and critical elements of her position; (3) the employee's performance standards are valid; (4) the appellant's performance during the appraisal period was unacceptable in one or more critical elements; (5) the agency warned the employee of the inadequacies of her performance during the appraisal period and gave her a reasonable opportunity to demonstrate acceptable performance; and (6) after an adequate improvement period, the employee's performance remained unacceptable in one or more of the critical elements for which the agency provided her an opportunity to demonstrate acceptable performance. *Lee v. Department of Veterans Affairs*, 2022 MSPB 11, ¶ 15.[5] In the initial decision, the administrative judge reversed the appellant's removal based solely on his finding that the agency did not prove the validity of its

was not readily available before the record closed. *See Durr v. Department of Veterans Affairs*, 119 M.S.P.R. 195, ¶ 23 (2013); 5 C.F.R. § 1201.114(a).

[4] Substantial evidence is the degree of relevant evidence that a reasonable person, considering the record as a whole, might accept as adequate to support a conclusion, even though other reasonable persons might disagree. This is a lower standard of proof than preponderance of the evidence. 5 C.F.R. § 1201.4(p).

[5] In the initial decision, the administrative judge cited the Board's existing standard for chapter 43 actions, which did not include a requirement to prove that the appellant's performance during the appraisal period was unacceptable in one or more critical elements. ID at 4, 5 n.2. However, while this matter was pending before the Board on petition for review, our reviewing court recognized that additional element of an agency's burden of proof under chapter 43. *Santos v. National Aeronautics and Space Administration*, 990 F.3d 1355, 1360-61 (Fed. Cir. 2021). The Federal Circuit's precedent in *Santos* applies to all pending cases, regardless of when the events at issue took place. *Lee*, 2022 MSPB 11, ¶ 16. Our decision in this appeal does not depend on the additional element recognized in *Santos*, and therefore the result would be the same under *Santos* or the pre-*Santos* standard.

revised performance standards for Critical Element 5. ID at 5-12. The administrative judge did not address the other elements. ID at 12 n.4.

<u>We find that the agency's revised performance standards for Critical Element 5 are valid.[6]</u>

¶8　　Performance standards, to the maximum extent feasible, must permit the accurate evaluation of job performance on the basis of an objective criteria. 5 U.S.C. § 4302(c)(1). Under this objectivity requirement, in order to be valid, performance standards must be reasonable, adequate under the circumstances to allow accurate measurement of the employee's performance, and sufficient to inform the employee of what he must do to achieve a satisfactory or acceptable rating. *Wilson v. Department of Health and Human Services*, 770 F.2d 1048, 1052 (Fed. Cir. 1985); *see Eibel v. Department of the Navy*, 857 F.2d 1439, 1443 (Fed. Cir. 1988) (discussing how performance standards can be "fleshed out" through other means).

¶9　　In this case, the agency's three-tier appraisal system rates performance at the "exceeds fully successful," "fully successful," and "unacceptable" levels. IAF, Tab 25 at 23-30. The revised performance standards for Critical Element 5, to which the agency held the appellant when making its determination to remove her for unacceptable performance, state that in order to be fully successful:

> Auditor generally performs the following with basic initial supervisory guidance: a) demonstrates an attitude of cooperation in responding to management requests and follows through with commitments; b) supports and promotes DCAA core values; c) takes the initiative to work with team members to improve processes and to make value-added contributions to DCAA and Field Audit Office

---

[6] On review, the agency argues that the administrative judge exceeded his authority by assessing the validity of its performance standards and claims that only OPM has the discretion to make such a determination. PFR File, Tab 1 at 6-8. The agency's contentions are misplaced, as longstanding precedent clarifies that in order to prevail on a Board appeal of an action taken under chapter 43, an agency must prove by substantial evidence the validity of its performance standards. *See, e.g.*, *Eibel v. Department of the Navy*, 857 F.2d 1439, 1441 (Fed. Cir. 1988); *Burnett v. Department of Health and Human Services*, 51 M.S.P.R. 615, 618 (1991).

> Participative Work Team objectives and efforts; d) in collaboration with team members, works to resolve team issues and make process improvements; e) participates in the identification of contractor(s) or types of audits for which he/she may serve as the lead auditor; f) effectively participates with other team members by providing updates on the status of audit assignments, sharing information, and assisting other auditors; g) maintains working relationships that reflect "One Agency" philosophy; h) contributes by actively participating in staff meetings, briefings, conferences[,] and/or workshops; i) may serve as a lead auditor for the entire audit, or sections of the audit, by appropriately providing coordination, advice, and assistance to other team members; j) effectively and efficiently performs other duties as assigned to support the Agency goals.

*Id.* at 35.

¶10    In the initial decision, the administrative judge found these revised performance standards for Critical Element 5 invalid because they did not provide adequate guidance on what was required of the appellant to achieve the "fully successful" performance level, nor could the agency "flesh out" the specifics of this performance level through other means. ID at 8-12. Upon our review, we find that the administrative judge erred in his analysis and overall finding. The revised performance standards for this critical element allow an accurate measurement of the appellant's performance, and in conjunction with other material provided to the appellant by her supervisor, sufficiently informed her of what she had to do to achieve an acceptable rating.

¶11    In *Dancy v. Department of the Navy*, 55 M.S.P.R. 331, 335 (1992), the Board found performance standards valid that included terms such as "frequent," "poor quality," and "good quality," as the terms are self-evident, and to the extent they were not, they were susceptible to further clarification by management in the day-to-day communications regarding an employee's work. This reasoning holds true in this instant case, as the appellant's revised performance standards for Critical Element 5 contain terms such as "generally," "actively," "appropriately," "effectively," and "efficiently." IAF, Tab 25 at 35. To the degree that these

terms are not self-evident, the agency may give content to an employee's otherwise valid performance standards by informing her of specific work requirements through written instructions, information concerning deficiencies and methods of improving performance, memoranda describing unacceptable performance, and responses to her questions concerning performance. *Baker v. Defense Logistics Agency*, 25 M.S.P.R. 614, 617 (1985), *aff'd*, 782 F.2d 1579 (Fed. Cir. 1986). The agency did this when it issued the appellant a progress review on January 23, 2018, which detailed five instances in which the appellant's performance failed to meet the "fully successful" level on Critical Element 5. IAF, Tab 25 at 36-37.

¶12 Further, the degree of objectivity and specificity required in performance standards depends on the nature of the job involved; professional, scientific, and technical jobs, which require the incumbent to exercise greater discretion and independence, are difficult to evaluate based on performance standards that are strictly objective, and the standards for such positions may require a degree of subjective judgment that would not be necessary or proper in a position of a less professional or technical nature. *Greer v. Department of the Army*, 79 M.S.P.R. 477, 483-84 (1998). This principle applies herein, as the appellant's position as an Auditor is technical in nature. IAF, Tab 25 at 31-35. The critical element at issue deals primarily with communication, support, and working relationships, meaning it is not susceptible to strictly objective, quantitative ratings. *Id.* at 35.

¶13 We therefore find that the revised performance standards for Critical Element 5 are reasonable, adequate under the circumstances to allow an accurate measurement of the appellant's performance and, when measured with the other material issued to the appellant, sufficient to inform her of what she had to do to achieve an acceptable rating. Accordingly, we reverse the initial decision to the extent it found the revised performance standards for Critical Element 5 are invalid under 5 U.S.C. § 4302(c)(1). *See Diprizio v. Department of Transportation*, 88 M.S.P.R. 73, ¶¶ 9-13 (2001) (vacating the administrative

judge's finding that performance standards were invalid, as the agency cured any vagueness in the standards through additional materials issued to the appellant).

**The agency did not prove by substantial evidence that it provided the appellant with a reasonable opportunity to demonstrate acceptable performance under the revised and substantially different performance standards for Critical Element 5.**

¶14     In the initial decision, the administrative judge did not analyze whether the agency met its burden of proving by substantial evidence that it warned the appellant of the inadequacies of her performance during the appraisal period and gave her a reasonable opportunity to demonstrate acceptable performance before removing her for unacceptable performance under chapter 43.  ID at 12 n.4; *see Lee v. Environmental Protection Agency*, 115 M.S.P.R. 533, ¶ 5 (2010). However, we find the record is sufficiently developed to address this issue on review.  *See Campbell v. Department of the Army*, 123 M.S.P.R. 674, ¶¶ 14-21 (2016) (analyzing on review an issue that was not explicitly addressed by the administrative judge in the initial decision and not raised in the petition for review).  An employee's right to a reasonable opportunity to improve has long been recognized as one of the most vital substantive rights in the chapter 43 performance appraisal framework.  *Sandland v. General Services Administration*, 23 M.S.P.R. 583, 590 (1984); *see* 5 U.S.C. § 4302(c)(6); 5 C.F.R. § 432.104.

¶15     As noted above, the agency issued the appellant revised performance standards for Critical Element 5 during her PIP.  IAF, Tab 25 at 21-22, 35.  These revised standards substantially differ from the standards in place prior to and during the appellant's PIP.  For example, the previous performance standards for this critical element outlined five areas that an Auditor had to generally perform to be rated "fully successful":

> The Auditor generally does the following: (a) responds positively to requests and follows through with commitments; (b) shares information on audit matters with co-workers; (c) supports Field Audit Office and Participative Work Team practices, objectives, and decisions; (d) contributes to meetings by being prepared to discuss the agenda, being receptive to new ideas, providing feedback and

helping to stay organized and focused; and (e) helps in the development of co-workers.

*Id.* at 27. The revised standards for Critical Element 5, outlined *supra* ¶ 9, contain ten areas that an Auditor has to generally perform to be rated "fully successful," and includes new responsibilities, notably participating in the identification of contractor(s) or types of audits for which she may serve as a lead auditor, serving as a lead auditor, promoting DCAA core values and the "One Agency" philosophy, and working on process improvements. *Id.* at 35. The revised standards also changed the name of Critical Element 5 from "Working Relationships" to "Internal Communication and Support," further evidencing that the revised standards encompassed broader duties and responsibilities *Id.* at 27, 35. Indisputably, the revised standards substantially differ from the standards that the appellant was held to before and during her PIP.

¶16    When an agency issues revised performance standards that substantially differ from those applicable prior to and during a reasonable opportunity to improve period, it must provide the employee with a reasonable evaluation period under the revised standards, and if her performance remains unacceptable, a new reasonable opportunity to demonstrate acceptable performance under the revised standards before taking an action under chapter 43. *Boggess v. Department of the Air Force*, 31 M.S.P.R. 461, 462-66 (1986); *see* 5 U.S.C. § 4302(c)(6); 5 C.F.R. § 432.104. In this case, we find that the agency provided the appellant with a reasonable evaluation period under the revised and substantially different performance standards, but it failed to provide her with a reasonable opportunity to demonstrate acceptable performance under these standards before removing her under chapter 43.

¶17    For example, on January 23, 2018, the agency evaluated the appellant under these revised and substantially different standards and determined that she performed at an unacceptable level in Critical Element 5 from June 14 through December 15, 2017. IAF, Tab 25 at 36-37. This was the first time that the

agency provided any detailed notice to the appellant of her deficient performance under the revised standards. However, instead of then providing the appellant with a reasonable opportunity to demonstrate acceptable performance under the revised standards (*e.g.*, a new PIP), the agency proposed the appellant's removal under chapter 43 on February 13, 2018. *Id.* at 38-42.

¶18      Because the agency never provided the appellant with a reasonable opportunity to demonstrate acceptable performance under the revised and substantially different performance standards, we reverse the appellant's removal.[7]   *See Boggess*, 31 M.S.P.R. at 462-63 (stating that the administrative judge was correct in finding that the appellant was entitled to, among other things, a reasonable opportunity to improve *after* his performance was rated as deficient under the substantially different and revised performance standards before the agency could properly initiate a chapter 43 action based on his unacceptable performance).[8]

The appellant failed to prove any of her affirmative defenses.

¶19      In the initial decision, the administrative judge considered the evidence of record[9] and concluded that the appellant did not prove her affirmative defenses of

---

[7] In light of our conclusion that the appellant was not given a reasonable opportunity to improve, we need not address the other elements that the agency needed to prove to substantiate a removal under chapter 43.

[8] On review, the agency argues that the administrative judge erred by reversing the appellant's removal and instead should have sent the action back to the agency to initiate removal proceedings for unacceptable performance under chapter 75. PFR File, Tab 1 at 12-13. The agency provided no support for this argument. In general, an agency may rely on either 5 U.S.C. chapter 75 or chapter 43 to take a performance-based action. *Lovshin v. Department of the Navy*, 767 F.2d 826, 843 (Fed. Cir. 1985) (en banc). The agency made the decision in this case to proceed with the appellant's removal under chapter 43, IAF, Tab 25 at 38, meaning the administrative judge correctly adjudicated this appeal under the chapter 43 framework.

[9] The administrative judge's findings included credibility determinations. ID at 15-18, 21-23, 27; *see Aldridge v. Department of Agriculture*, 111 M.S.P.R. 670, ¶ 11 (2009) (holding that, because the administrative judge heard live testimony, his credibility

discrimination based on sex and disability, retaliation for EEO activity, and reprisal for whistleblowing.[10] ID at 12-27. The appellant has not filed a petition or cross petition for review contesting these findings. Upon our review, we find no reason to disturb the administrative judge's conclusions on these affirmative defenses.[11] *See Clay v. Department of the Army*, 123 M.S.P.R. 245, ¶ 6 (2016) (finding no reason to disturb the administrative judge's findings where she considered the evidence as a whole, drew appropriate inferences, and made reasoned conclusions); *Broughton v. Department of Health and Human Services*, 33 M.S.P.R. 357, 359 (1987) (same).

## ORDER

¶20      We ORDER the agency to cancel the removal action and to retroactively restore the appellant, effective April 9, 2018. *See Kerr v. National Endowment*

---

determinations must be deemed to be at least implicitly based on the demeanor of the witnesses).

[10] In the initial decision, the administrative judge found that the appellant proved by preponderant evidence that the agency perceived that she engaged in protected activity under 5 U.S.C. § 2302(b)(9)(C) and that such perception was a contributing factor in her removal. ID at 19-24; *see Corthell v. Department of Homeland Security*, 123 M.S.P.R. 417, ¶ 13 (2016) (outlining how an appellant who is perceived to have engaged in protected activity under 5 U.S.C. § 2302(b)(9)(C) is entitled to the protections of the whistleblower protection statutes). The administrative judge cited the relevant legal authority and concluded that the agency proved by clear and convincing evidence that it would have removed the appellant in the absence of her perceived protected activity. ID at 21-24. The appellant does not challenge the administrative judge's findings in this regard, and we discern no error in his analysis. However, to the extent that the administrative judge improperly stated in the initial decision that the appellant failed to prove by preponderant evidence that the agency engaged in whistleblower reprisal, ID at 24, any such adjudicatory error is not prejudicial to the appellant's substantive rights and provides no basis for reversal of the initial decision. *Panter v. Department of the Air Force*, 22 M.S.P.R. 281, 282 (1984).

[11] Because we discern no error with the administrative judge's finding that the appellant failed to show that discrimination and/or retaliation was a motivating factor in the agency's decision to remove her, we do not reach the question of whether discrimination and/or retaliation was a "but-for" cause of the removal action. *Pridgen v. Office of Management and Budget*, 2022 MSPB 31, ¶¶ 22, 31.

*for the Arts*, [726 F.2d 730](#) (Fed. Cir. 1984). The agency must complete this action no later than 20 days after the date of this decision.

¶21     We also ORDER the agency to pay the appellant the correct amount of back pay, interest on back pay, and other benefits under the Office of Personnel Management's regulations, no later than 60 calendar days after the date of this decision. We ORDER the appellant to cooperate in good faith in the agency's efforts to calculate the amount of back pay, interest, and benefits due, and to provide all necessary information the agency requests to help it carry out the Board's Order. If there is a dispute about the amount of back pay, interest due, and/or other benefits, we ORDER the agency to pay the appellant the undisputed amount no later than 60 calendar days after the date of this decision.

¶22     We further ORDER the agency to tell the appellant promptly in writing when it believes it has fully carried out the Board's Order and of the actions it has taken to carry out the Board's Order. The appellant, if not notified, should ask the agency about its progress. *See* [5 C.F.R. § 1201.181](#)(b).

¶23     No later than 30 days after the agency tells the appellant that it has fully carried out the Board's Order, the appellant may file a petition for enforcement with the office that issued the initial decision on this appeal if the appellant believes that the agency did not fully carry out the Board's Order. The petition should contain specific reasons why the appellant believes that the agency has not fully carried out the Board's Order, and should include the dates and results of any communications with the agency. [5 C.F.R. § 1201.182](#)(a).

¶24     For agencies whose payroll is administered by either the National Finance Center of the Department of Agriculture (NFC) or the Defense Finance and Accounting Service (DFAS), two lists of the information and documentation necessary to process payments and adjustments resulting from a Board decision are attached. The agency is ORDERED to timely provide DFAS or NFC with all documentation necessary to process payments and adjustments resulting from the

Board's decision in accordance with the attached lists so that payment can be made within the 60-day period set forth above.

**NOTICE TO THE APPELLANT REGARDING
YOUR RIGHT TO REQUEST
ATTORNEY FEES AND COSTS**

You may be entitled to be paid by the agency for your reasonable attorney fees and costs. To be paid, you must meet the requirements set forth at Title 5 of the United States Code (5 U.S.C.), sections 7701(g), 1221(g), or 1214(g). The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202, and 1201.203. If you believe you meet these requirements, you must file a motion for attorney fees and costs WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION. You must file your motion for attorney fees and costs with the office that issued the initial decision on your appeal.

**NOTICE OF APPEAL RIGHTS[12]**

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter. 5 C.F.R. § 1201.113. You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file

---

[12] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2)** **Judicial or EEOC review of cases involving a claim of discrimination**.  This option applies to you <u>only</u> if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination.  If so, you may obtain judicial review of this decision—<u>including a disposition of your discrimination claims</u>—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** <u>after you receive</u> this decision.  <u>5 U.S.C. § 7703</u>(b)(2); *see Perry v. Merit Systems Protection Board*, <u>582 U.S. 420</u> (2017).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** <u>after your representative</u> receives this decision.  If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security.  *See* <u>42 U.S.C. § 2000e-5</u>(f) and <u>29 U.S.C. § 794a</u>.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

<u>http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx</u>.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of <u>your discrimination claims only, excluding all other issues</u>.  <u>5 U.S.C. § 7702</u>(b)(1).  You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** <u>after you receive</u> this decision.  <u>5 U.S.C. § 7702</u>(b)(1).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** <u>after your representative receives</u> this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C.  20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C.  20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**.  This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D).  If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[13]  The court of appeals must receive your petition for review within **60 days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(B).

---

[13] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.


FOR THE BOARD:                                    /s/ for
                                              _____
                                              Jennifer Everling
                                              Acting Clerk of the Board
Washington, D.C.


# DFAS BACK PAY CHECKLIST

The following documentation is required by DFAS Civilian Pay to compute and pay back pay pursuant to 5 CFR § 550.805.  Human resources/local payroll offices should use the following checklist to ensure a request for payment of back pay is complete.  Missing documentation may substantially delay the processing of a back pay award.  **More information may be found at:** **https://wss.apan.org/public/DFASPayroll/Back%20Pay%20Process/Forms/AllItems.aspx.**

**NOTE:  Attorneys' fees or other non-wage payments (such as damages) are paid by vendor pay, not DFAS Civilian Pay.**

☐  1) Submit a **"SETTLEMENT INQUIRY - Submission"** Remedy Ticket.  Please identify the specific dates of the back pay period within the ticket comments.

Attach the following documentation to the Remedy Ticket, or provide a statement in the ticket comments as to why the documentation is not applicable:

☐  2) Settlement agreement, administrative determination, arbitrator award, or order.

☐  3) Signed and completed "Employee Statement Relative to Back Pay".

☐  4) All required SF50s (new, corrected, or canceled).  **\*\*\*Do not process online SF50s until notified to do so by DFAS Civilian Pay.\*\*\***

☐  5) Certified timecards/corrected timecards.  **\*\*\*Do not process online timecards until notified to do so by DFAS Civilian Pay.\*\*\***

☐  6) All relevant benefit election forms (e.g. TSP, FEHB, etc.).

☐  7) Outside earnings documentation.  Include record of all amounts earned by the employee in a job undertaken during the back pay period to replace federal employment.  Documentation includes W-2 or 1099 statements, payroll documents/records, etc.  Also, include record of any unemployment earning statements, workers' compensation, CSRS/FERS retirement annuity payments, refunds of CSRS/FERS employee premiums, or severance pay received by the employee upon separation.

**Lump Sum Leave Payment Debts:**  When a separation is later reversed, there is no authority under 5 U.S.C. § 5551 for the reinstated employee to keep the lump sum annual leave payment they may have received.  The payroll office must collect the debt from the back pay award.  The annual leave will be restored to the employee.  Annual leave that exceeds the annual leave ceiling will be restored to a separate leave account pursuant to 5 CFR § 550.805(g).



## NATIONAL FINANCE CENTER CHECKLIST FOR BACK PAY CASES

Below is the information/documentation required by National Finance Center to process payments/adjustments agreed on in Back Pay Cases (settlements, restorations) or as ordered by the Merit Systems Protection Board, EEOC, and courts**.**

1. Initiate and submit AD-343 (Payroll/Action Request) with clear and concise information describing what to do in accordance with decision.

2. The following information must be included on AD-343 for Restoration:

   a. Employee name and social security number.
   b. Detailed explanation of request.
   c. Valid agency accounting.
   d. Authorized signature (Table 63).
   e. If interest is to be included.
   f. Check mailing address.
   g. Indicate if case is prior to conversion.  Computations must be attached.
   h. Indicate the amount of Severance and Lump Sum Annual Leave Payment to be collected (if applicable).

Attachments to AD-343

1. Provide pay entitlement to include Overtime, Night Differential, Shift Premium, Sunday Premium, etc. with number of hours and dates for each entitlement (if applicable).
2. Copies of SF-50s (Personnel Actions) or list of salary adjustments/changes and amounts.
3. Outside earnings documentation statement from agency.
4. If employee received retirement annuity or unemployment, provide amount and address to return monies.
5. Provide forms for FEGLI, FEHBA, or TSP deductions. (if applicable)
6. If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.
7. If employee retires at end of Restoration Period, provide hours of Lump Sum Annual Leave to be paid.

NOTE:  If prior to conversion, agency must attach Computation Worksheet by Pay Period and required data in 1-7 above.

The following information must be included on AD-343 for Settlement Cases:  (Lump Sum Payment, Correction to Promotion, Wage Grade Increase, FLSA, etc.)

   a. Must provide same data as in 2, a-g above.
   b. Prior to conversion computation must be provided.
   c. Lump Sum amount of Settlement, and if taxable or non-taxable.

If you have any questions or require clarification on the above, please contact NFC's Payroll/Personnel Operations at 504-255-4630.