FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| CHRISTOPHER A. OBRIEN, | No. 22-55360 |
| *Plaintiff-Appellant*, | D.C. No. 8:20-cv-01356-AS |
| v. | |
| FRANK BISIGNANO, Commissioner of Social Security, | OPINION |
| *Defendant-Appellee*. | |

Appeal from the United States District Court
for the Central District of California
Alka Sagar, Magistrate Judge, Presiding

Argued and Submitted May 2, 2024
Pasadena, California

Filed July 1, 2025

Before: Jacqueline H. Nguyen, Daniel P. Collins, and
Holly A. Thomas, Circuit Judges.[*]

Opinion by Judge Collins

---

[*] This case was originally argued and submitted to a panel consisting of Judges Kleinfeld, Watford, and Collins. After Judge Watford resigned from the court and Judge Kleinfeld became unavailable, Judges Nguyen and H.A. Thomas were drawn to replace them pursuant to General Order 3.2(h), the submission to the prior panel was vacated, and the case was reargued and resubmitted.

# SUMMARY[**]

## Social Security

The panel reversed the district court's judgment upholding the denial by a Social Security Administration (SSA) administrative law judge (ALJ) of Christopher Obrien's claim for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act.

The ALJ denied the applications on the basis that Obrien had the residual functional capacity to perform his past relevant work as a telemarketer and sales representative and therefore was not disabled. Obrien challenged the ALJ's decision in the district court, arguing in part that his prior work as a telemarketer was either too far in the past, or too insubstantial, to count as "past relevant work." The Commissioner of Social Security conceded below and in this court that substantial evidence did not support the ALJ's finding that Obrien could perform his past work as a sales representative. The district court upheld the denial of benefits, finding that Obrien's objections to the ALJ's determination regarding his past relevant work as a telemarketer were both forfeited and meritless.

The panel first rejected the Commissioner's argument that Obrien had forfeited in the district court any objections to the Commissioner's administrative forfeiture arguments by failing to respond to them in his optional reply. The panel next rejected the Commissioner's argument that Obrien

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

administratively forfeited his objections to the ALJ's past relevant work determination by failing to specifically raise the objections before the ALJ. The issue of whether Obrien's past telemarketing work constituted "past relevant work" under the applicable regulations was inherent in the five-step disability evaluation process that the ALJ was required to follow in determining whether Obrien was disabled within the meaning of the Act. Given that SSA ALJ hearings are "informal, nonadversarial proceedings," and ALJs are required to "look fully into the issues themselves" before rendering a decision on the disability determination, Obrien had no further responsibility to specifically flag the issue before the ALJ. Therefore, no administrative issue-exhaustion requirement precluded the panel's consideration of Obrien's arguments on the merits.

On the merits, the panel held that substantial evidence did not support the ALJ's determination that Obrien's work as a telemarketer in 2003 and 2009 counted as "past relevant work" under the applicable regulations. First, there was no basis to conclude that Obrien's 2003 telemarketing work was "done within the past 15 years," as required by the regulations. Second, as to Obrien's 2009 telemarketing work, there were critical ambiguities in the evidence pertaining to his average monthly wages over the relevant timeframe, which triggered the ALJ's duty to develop the record further. Where, as here, additional development of the record by the ALJ is required to permit an adequate determination, the ALJ's decision is not supported by substantial evidence and must be remanded for further proceedings.

**COUNSEL**

Lawrence D. Rohlfing (argued), Law Offices of Lawrence D. Rohlfing, Santa Fe Springs, California, for Plaintiff-Appellant.

Shea L. Bond (argued), Special Assistant United States Attorney, San Francisco, California; Matthew W. Pile, Associate General Counsel; Office of the General Counsel, Office of Program Litigation, Social Security Administration; E. Martin Estrada, United States Attorney; for Defendant-Appellee.

**OPINION**

COLLINS, Circuit Judge:

Christopher Obrien appeals the district court's decision upholding the denial of his claim for disability insurance benefits and supplemental security income by an administrative law judge ("ALJ") of the Social Security Administration ("SSA"). Obrien contends that, in several respects, the ALJ's decision was not supported by substantial evidence when measured against the regulatory standards that the ALJ was required to apply and that he recited in his decision. The district court upheld the ALJ's decision, ruling that (1) Obrien had forfeited his objections by failing to specifically raise them before the ALJ; and (2) in any event, Obrien's objections were meritless. We conclude that the district court erred on both counts, and we therefore reverse the district court's judgment and remand with instructions to remand the matter back to the agency for further proceedings.

**I**

In September 2016, Obrien applied for disability insurance benefits under Title II of the Social Security Act ("the Act"), alleging that he suffered from various medical conditions that, starting on August 21, 2010, rendered him disabled within the meaning of the Act. In connection with his application, Obrien provided certain required information concerning his work history. In particular, he stated that he had performed telemarketing work in 2003 and 2009 and that he had worked as a door-to-door salesperson in 2013 and 2014.

The SSA denied Obrien's claim for benefits, and Obrien timely requested reconsideration by an ALJ. Shortly thereafter, Obrien also filed an application for supplemental security income under Title XVI of the Act, and that application was concurrently considered by the ALJ. At the hearing before the ALJ concerning the applications, both Obrien and a vocational expert testified. During the vocational expert's testimony, the ALJ posed a hypothetical question that asked the expert to assume that Obrien had the "residual functional capacity" to perform certain specified tasks, and the ALJ asked the expert whether, in light of that assumption, Obrien would be able to perform his past work as a telemarketer. The vocational expert answered that, on that assumption, Obrien would be able to perform that past work.

After the hearing, the ALJ issued a written decision in November 2019 determining that, although Obrien had a number of severe impairments, he was not disabled within the meaning of Title II or Title XVI of the Act.[1] The ALJ

---

[1] The ALJ applied "the familiar 'five-step sequential evaluation process'" for determining disability under Title II and Title XVI. *See*

concluded that, despite his impairments, Obrien had a residual functional capacity that matched what the ALJ had described in the above-referenced hypothetical question to the vocational expert. The ALJ further concluded that, in light of that residual functional capacity, Obrien was able to perform his "past relevant work" as a telemarketer and as a sales representative. *See* 20 C.F.R. § 404.1520(a)(4)(iv) (stating that, if the claimant can still perform "past relevant work" in light of his "residual functional capacity," he is "not disabled" under Title II); *id*. § 416.920(a)(4)(iv) (same for Title XVI); *see also* 42 U.S.C. § 423(d)(2)(A) (stating that a claimant must be "unable to do his previous work" to be disabled for purposes of Title II disability insurance benefits); *id*. § 416(i)(1) (applying a similar definition to Title II generally); *id*. § 1382c(a)(3)(B) (applying a similar definition to Title XVI). Obrien sought review from the

---

*Woods v. Kijakazi*, 32 F.4th 785, 787 n.1 (9th Cir. 2022) (citation omitted). We have described that process as follows:

> At the first step, a claimant "doing substantial gainful [work] activity" is not disabled. At the second step, a claimant is not disabled unless she has a "medically determinable physical or mental impairment" or combination of impairments that is severe and either lasts at least a year or can be expected to result in death. At the third step, a claimant is disabled if the severity of her impairments meets or equals one of various impairments listed by the Commissioner of Social Security. At the fourth step, a claimant is not disabled if her residual functional capacity allows her to perform her past relevant work. At the fifth step, a claimant is disabled if, given her residual functional capacity, age, education, and work experience, she cannot make an adjustment to other work that "exists in significant numbers in the national economy."

*Id*. (alteration in original) (citations omitted).

Social Security Appeals Council, and in doing so, he did not submit any new evidence or arguments. The Appeals Council denied Obrien's request for review, making the ALJ's order the final decision of the Commissioner. *See Wischmann v. Kijakazi*, 68 F.4th 498, 504 (9th Cir. 2023).

Obrien then timely filed this action against the Commissioner in the district court pursuant to § 205(g) and § 1631(c)(3) of the Act. *See* 42 U.S.C. § 405(g) (providing for civil cause of action against the Commissioner for denial of benefits under Title II); *id*. § 1383(c)(3) (stating that final benefits decisions under Title XVI are subject to judicial review under § 205(g) of the Act, 42 U.S.C. § 405(g)). Under the magistrate judge's standard order prescribing the special procedures applicable in social security cases,[2] the parties were required to prepare and file a single joint document that contained Obrien's arguments challenging the Commissioner's decision, the Commissioner's response, and Obrien's "optional reply."

As relevant here, Obrien's opening portion of the joint submission raised only two issues: (1) whether the ALJ properly determined that he "could perform past work as a sales representative"; and (2) whether the ALJ properly determined that he "had past relevant work as a telephone solicitor/telemarketer."[3] With respect to the first issue, the Commissioner agreed with Obrien's contention that substantial evidence did not support the ALJ's determination that Obrien could perform his past work as a sales

---

[2] Both sides consented to proceed before a magistrate judge pursuant to 28 U.S.C. § 636(c).

[3] Obrien also argued that "the ALJ and Appeals Council acted under an unconstitutional delegation of authority," but the district court rejected that contention, and Obrien has not challenged that ruling on appeal.

representative.  As to the second issue, Obrien argued that his prior work as a telemarketer was either too far in the past, or too insubstantial, to count as "past relevant work" within the meaning of the applicable regulations.  In response, the Commissioner contended that Obrien had forfeited his current objections concerning his telemarketer work by failing to raise them before the ALJ and that, in any event, Obrien's objections were meritless.  The Commissioner asserted that, based on the ALJ's valid finding that Obrien could perform his past relevant work as a telemarketer, the ultimate determination that Obrien was not disabled could be upheld notwithstanding the ALJ's erroneous reliance on Obrien's prior work as a sales representative.

The district court upheld the ALJ's denial of benefits, agreeing with the Commissioner that Obrien's objections to the ALJ's finding concerning his prior work as a telemarketer were both forfeited and meritless.  Obrien has timely appealed.

We have jurisdiction pursuant to 28 U.S.C. § 1291.  "We review the district court's order affirming the ALJ's denial of social security benefits de novo," *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008), meaning that we review the ALJ's decision through the same lens as the district court did, *see Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998). We review questions of law de novo.  *See Avenetti v. Barnhart*, 456 F.3d 1122, 1125 (9th Cir. 2006).  In the absence of legal error, we "will disturb the denial of benefits only if the [ALJ's] decision . . . 'is not supported by substantial evidence.'"  *Tommasetti*, 533 F.3d at 1038 (citation omitted).  Substantial evidence "means only[] 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Biestek v. Berryhill*, 587

U.S. 97, 103 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

## II

Obrien argues that the district court erred in its threshold determination that, by failing to argue in the administrative proceedings that his prior telemarketing work did not meet the regulatory requirements for "past relevant work," Obrien forfeited any such arguments and could not raise them in the district court. We conclude that no forfeiture occurred.

## A

Before we address the administrative forfeiture argument accepted by the district court, we first address the Commissioner's threshold contention that Obrien committed an *additional* forfeiture in the district court. According to the Commissioner, after the issue of administrative forfeiture was raised in the Commissioner's response to Obrien's opening arguments in the district court, Obrien was required to address that administrative forfeiture issue in his reply, and his asserted failure to do so constitutes a forfeiture of any objections to the Commissioner's administrative forfeiture arguments. For multiple reasons, this contention fails.

As an initial matter, the Commissioner is wrong in contending that the district court found any such additional forfeiture by Obrien. According to the Commissioner, the "District Court correctly observed" that Obrien "*never* contested in his [district court] briefing that he had forfeited/waived" his telemarketer-work arguments by failing to raise them before the ALJ. No record citation was supplied for this assertion, which is inaccurate. The district court never stated that Obrien had forfeited any objection to

the Commissioner's *administrative forfeiture arguments* by assertedly failing to respond to them in his optional reply in the district court.  Nor did the district court, in accepting the Commissioner's administrative forfeiture arguments, rely on the ground that those arguments were unopposed.  On the contrary, the district court explained in detail why it *agreed* with the Commissioner's administrative forfeiture arguments on the merits, and that purely substantive ruling is alone sufficient to allow Obrien to then challenge that ruling in his opening brief on appeal (as he has done).  *See JL Beverage Co. v. Jim Beam Brands Co.*, 828 F.3d 1098, 1108 (9th Cir. 2016) (holding that, where the district court does not rely on waiver or forfeiture, but instead considers and rules on the merits of the assertedly forfeited issue, "it is not waived on appeal").[4]

In any event, the Commissioner's argument that Obrien committed an additional forfeiture in the district court is factually and legally erroneous.  Although Obrien's reply in the district court did not specifically mention the Commissioner's administrative forfeiture arguments, that reply staked out a view of the district court's role that was fundamentally inconsistent with the Commissioner's position.  Specifically, Obrien argued in his reply that the district court's role was to "sit[] in quasi-appellate jurisdiction"; that the court therefore was obligated to review the ALJ's decision "for substantial evidence and error of

---

[4] The Commissioner also notes that the district court stated that Obrien had not provided any basis for the court "to find a manifest injustice" that could *excuse* his administrative forfeiture.  Obrien may thereby have forfeited in the district court any arguments that, *if* he committed an administrative forfeiture, a "manifest injustice" exception to that forfeiture rule should be applied.  But any such more limited forfeiture is irrelevant, because Obrien has not argued for a "manifest injustice" exception in his briefing on appeal.

law"; and that this role required the court to "test the explicit factual findings made" by the ALJ against "the elements of past relevant work as required by the regulation." If the court performed that role, Obrien argued, the court would see that, when measured against the regulatory standard, the ALJ's findings were "wanting." Obrien's reply thus necessarily rested on the premise that the district court was in all events *required* to weigh the ALJ's findings against the applicable legal standard. The Commissioner's assertion that Obrien wholly failed to oppose the Commissioner's administrative forfeiture arguments is thus factually erroneous.

The Commissioner's argument is also legally flawed. A forfeiture occurs when a party fails "to make the timely assertion of a right" in accordance with the governing procedural requirements that are set forth in the applicable statutes, rules, orders, or case authority. *United States v. Olano*, 507 U.S. 725, 733 (1993); *see also Brown v. Arizona*, 82 F.4th 863, 873 (9th Cir. 2023) (en banc) ("[I]t is claims that are deemed waived or forfeited, not arguments." (citation omitted)). Here, the Commissioner has not pointed to any relevant procedural requirement mandating that Obrien had to expressly reply to the Commissioner's responsive contentions concerning administrative forfeiture. The district court's governing procedural order afforded Obrien an "*optional* reply,"[5] which means, of course, that a

---

[5] We also note, parenthetically, that under the new national rules that took effect after the district court proceedings, reply briefs in social security cases are likewise optional. *See* FED. R. CIV. P., SUPP. R. 8 FOR SOC. SEC. ACTIONS UNDER 42 U.S.C. § 405(g) (stating that, in the parties' merits briefing concerning the agency decision, "[t]he plaintiff may file a reply brief").

reply was not required and that no forfeiture can be attached to a partial or total "failure" to file one.[6]

For all of these reasons, we reject the Commissioner's argument that the issue of administrative forfeiture is not properly before us.

## B

We therefore turn to whether the district court correctly held that Obrien forfeited his current challenges to the ALJ's ruling by failing specifically to raise those objections before the ALJ. In considering that issue, we begin by examining the Supreme Court's most recent decisions addressing the extent to which a claimant seeking disability benefits is required to exhaust issues during the administrative process.

## 1

In *Sims v. Apfel*, 530 U.S. 103 (2000), the Court considered whether a claimant seeking disability-related benefits under Titles II and XVI of the Act forfeited judicial review of any objections that the claimant failed to raise in her request for administrative review of the ALJ's decision by the Social Security Appeals Council. *Id*. at 105–06. Because a forfeiture occurs only when there is a failure to

---

[6] We note, however, that even where there is, strictly speaking, no procedural default or forfeiture, a party's failure in a reply brief to respond to a particular argument raised in an opponent's answering briefing may nonetheless be construed as an *abandonment* of certain arguments or claims. *See*, *e.g.*, *Sabra v. Maricopa Cnty. Cmty. Coll. Dist.*, 44 F.4th 867, 881–82 (9th Cir. 2022) (holding that a plaintiff-appellant's failure to respond, in a reply brief, to the answering brief's claim-specific arguments for dismissal of one particular cause of action against one defendant amounted to an "abandonment" of that particular claim). Here, there is no basis for concluding that Obrien's district court reply "abandoned" any particular claim or argument in favor of his remaining points.

comply with a procedural requirement concerning the presentation of issues or objections, the Court focused on whether there was any such requirement to raise specific issues before the Appeals Council. *See id*. at 107–10.

The Court in *Sims* observed that "requirements of administrative issue exhaustion are largely creatures of statute," although the Court also noted that it is "common for an agency's *regulations* to require issue exhaustion in administrative appeals." *Id*. at 107–08 (emphasis added). Neither source, however, supported imposition of an issue-exhaustion requirement in *Sims*. Although the SSA's regulations made clear that requesting review by the Appeals Council was generally required in order for a claimant to obtain a judicially reviewable final decision, *id*. at 106–07, there was no applicable statute or regulation that further "require[d] *issue* exhaustion," *id*. at 108 (emphasis added). The only remaining question, then, was whether case authority recognized or supported the *judicial* imposition of "an issue-exhaustion requirement even in the absence of a statute or regulation." *Id*. at 108.

Because the predicate for any such "judicially imposed issue-exhaustion requirement is an analogy to the rule that appellate courts will not consider arguments not raised before trial courts," the Court held that "the desirability of a court imposing a requirement of issue exhaustion depends on the degree to which the analogy to normal adversarial litigation applies in a particular administrative proceeding." *Sims*, 530 U.S. at 108–09. Thus, "[w]here the parties are expected to develop the issues in an adversarial administrative proceeding, . . . the rationale for requiring issue exhaustion is at its greatest." *Id*. at 110. But "[w]here, by contrast, an administrative proceeding is not adversarial,

. . . the reasons for a court to require issue exhaustion are much weaker." *Id*.

Applying that principle, a plurality of the Court noted that, as a general matter, "Social Security proceedings are inquisitorial rather than adversarial." *Sims*, 530 U.S. at 110–11. As the plurality explained, "[i]t is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits, and the Council's review is similarly broad." *Id*. at 111 (citation omitted). Moreover, "[t]he Commissioner has no representative before the ALJ to oppose the claim for benefits," and the Court "found no indication that he opposes claimants before the Council." *Id*. The plurality further observed that the agency's regulations expressly state that the agency will "conduct[] the administrative review process in an informal, nonadversary manner," *id*. (quoting 20 C.F.R. § 404.900(b) (1999)), and that this informality was reflected in the short standard form that the Appeals Council provides for requesting review, *id*. at 111–12. Because there is no "adversarial development of issues by the parties" and "[t]he Council, not the claimant, has primary responsibility for identifying and developing the issues," the plurality concluded that the "analogy to judicial proceedings is at its weakest in this area." *Id*. at 112. The plurality therefore declined to impose "a judicially created issue-exhaustion requirement" and held that "[c]laimants who exhaust administrative remedies need not also exhaust *issues* in a request for review by the Appeals Council in order to preserve judicial review of those issues." *Id*. (emphasis added).

Justice O'Connor concurred in part and in the judgment. In her view, "the regulation[s] and procedures of the [agency] *affirmatively* suggest that specific issues need not be raised before the Appeals Council," and that made it

"particularly inappropriate" to impose any additional judicially created requirement that specific issues must be raised before the Appeals Council. *Id*. at 113–14 (O'Connor, J., concurring) (emphasis added).

The Court in *Sims* explicitly left open, however, whether claimants must also "exhaust issues *before the ALJ*" in order to preserve them for judicial review. *Sims*, 530 U.S. at 107 (majority opinion) (emphasis added); *see also Shaibi v. Berryhill*, 883 F.3d 1102, 1109 (9th Cir. 2017) (noting that "*Sims* concerned only whether a claimant must present all relevant issues *to the Appeals Council* to preserve them for judicial review"). The Court subsequently considered such a question in *Carr v. Saul*, 593 U.S. 83 (2021).

In *Carr*, several claimants, some of whom had been represented by attorneys during their administrative proceedings, filed actions in the relevant district courts challenging the agency's denial of disability benefits. *Id*. at 86; *see also* Brief for the Respondent, *Carr v. Saul* (No. 19-1442), 2021 WL 354272, at \*7. In those district court proceedings, the claimants invoked a recent Supreme Court decision in challenging, for the first time, the constitutionality of the appointments of the SSA ALJs who had denied their claims for benefits. *See Carr*, 593 U.S. at 86–87 (noting that the claimants relied on *Lucia v. SEC*, 585 U.S. 237 (2018), which held that "ALJs within the Securities and Exchange Commission (SEC) had been unconstitutionally appointed" in violation of the Appointments Clause). The question in *Carr* was whether the claimants had "forfeited their Appointments Clause challenges by failing to make them first to their respective ALJs." *Id*. at 85.

The Court's analysis of that issue started with "the baseline set by *Sims*." *Carr*, 593 U.S. at 89. Under *Sims*, the Court explained, the question whether a judicially fashioned exhaustion requirement should be recognized turns on the extent to which "the parties are expected to develop the issues in an adversarial administrative proceeding," as opposed to an informal, nonadversarial proceeding in which the agency has a primary role in framing the issues and developing the record. *Id*. (quoting *Sims*, 530 U.S. at 110). On that score, the Court noted that "[m]uch of what the *Sims* opinions said about Appeals Council review applies equally to ALJ proceedings." *Id*. at 90. "The SSA regulations that ensure informal, nonadversarial proceedings and plenary review apply as much to ALJs as to the Appeals Council," the Court held, inasmuch as those regulations "provide that ALJs will 'loo[k] fully into the issues' themselves, [20 C.F.R.] § 404.944, and may 'raise a new issue' at 'any time . . . before mailing notice of the hearing decision,' [*id*.] § 404.946(b)(1)." *Id*. at 91. The Court also stated, however, that there were "several differences that may make ALJ hearings relatively more adversarial." *Id*. In particular, "ALJ hearings are typically available as a matter of right"; such hearings "present far more opportunities for claimants to press issues, and the SSA consequently relies more heavily on those proceedings to conduct the agency's principal and most thorough investigation of disability claims"; and the "notice of hearing" that the SSA sends to claimants lists "the specific issues to be decided in the case," and "[c]laimants must notify the ALJ in writing if they object to the issues to be decided at the hearing." *Id*. at 91–92 (simplified). However, the Court concluded that, "[e]ven accepting that ALJ proceedings may be comparatively more

adversarial than Appeals Council proceedings, the question nonetheless remains whether the ALJ proceedings at issue here were adversarial enough to support the 'analogy to judicial proceedings' that undergirds judicially created issue-exhaustion requirements." *Id*. at 92 (quoting *Sims*, 530 U.S. at 112).

In answering that question, *Carr* held that, when the generally nonadversarial nature of SSA proceedings was considered in light of "two additional considerations" applicable to "the specific context of [the claimants'] Appointments Clause challenges," the scales tipped "decidedly against imposing an issue-exhaustion requirement." *Carr*, 593 U.S. at 92. "First, th[e] Court has often observed that agency adjudications are generally ill suited to address structural constitutional challenges, which usually fall outside the adjudicators' areas of technical expertise." *Id*. Second, given that ALJs are not "capable of remedying any defects in their own appointments," such objections fell within the long-recognized "futility exception to exhaustion requirements." *Id*. at 93–94. The Court therefore held that "[t]aken together, the inquisitorial features of SSA ALJ proceedings, the constitutional character of [the claimants'] claims, and the unavailability of any remedy make clear that adversarial development of the Appointments Clause issue simply did not exist (and could not exist) in [the claimants'] ALJ proceedings." *Id*. at 95–96 (simplified).

The Court reserved, however, the question whether "the scales might tip differently" in the context of "routine objections to individual benefits determinations." *Carr*, 593 U.S. at 92 n.5. Nonetheless, the Court also reiterated the general rule that, "[w]here claimants are not expected to

develop certain issues in ALJ proceedings, it is generally inappropriate to treat those issues as forfeited." *Id*. at 89 n.3.

2

In applying *Carr*'s standards for determining whether "to impose a judicially created issue-exhaustion requirement," *Carr*, 593 U.S. at 88,[7] we must first identify the relevant "issues" raised by Obrien and then determine whether, notwithstanding the generally informal and inquisitorial nature of ALJ proceedings, those issues are the sort that claimants are "expected to develop" in those proceedings, such that requiring issue exhaustion is appropriate, *id*. at 89 n.3.

Obrien's claim before the district court, and on appeal, is that the record evidence did not support the ALJ's conclusion that Obrien's prior telemarketing work met the specific regulatory requirements to count as "past relevant work." Here, the ALJ's ruling expressly recognized that, at "step four" of the five-step disability analysis, *see supra* note 1, the ALJ was required to apply those regulatory requirements, and he explained at some length what they were:

> Next, the undersigned must determine at step four whether the claimant has the residual functional capacity to perform the requirements of his past relevant work (20

---

[7] The Commissioner does not contend that any statute or regulation requires issue exhaustion here, and we are not aware of any such statute or regulation either. In particular, the Commissioner has not argued that the points raised by Obrien were not embraced within the SSA's notice of hearing in his case, which broadly framed the issues in terms of the five-step evaluation process and the regulatory standards governing that process. *See Carr*, 593 U.S. at 91–92.

CFR 404.1520(f) and 416.920(f)). The term past relevant work means work performed (either as the claimant actually performed it or as it is generally performed in the national economy) within the last 15 years or 15 years prior to the date that disability must be established. In addition, the work must have lasted long enough for the claimant to learn to do the job and have been SGA ["significant gainful activity"] (20 CFR 404.1560(b), 404.1565, 416.960(b), and 416.965). If the claimant has the residual functional capacity to do his past relevant work, the claimant is not disabled. If the claimant is unable to do any past relevant work or does not have any past relevant work, the analysis proceeds to the fifth and last step.

Although the ALJ's ruling does not set forth his reasoning as to *why* he thought those standards were satisfied with respect to Obrien's telemarketing work, he clearly concluded that they were, because he explicitly held that this telemarketing work constituted "past relevant work." Obrien's contention is thus that, when measured against the regulatory standards that the ALJ himself recited and necessarily applied, the ALJ's conclusion that Obrien's past telemarketing work qualified as "past relevant work" was not supported by substantial evidence.

Viewing the question that way, we discern no basis for imposing a judicially crafted requirement that Obrien was "expected" to do more "to develop [this] issue[]" in order to preserve it for judicial review in the district court. *Carr*, 593 U.S. at 89 n.3; *see also id*. at 89 ("The critical feature that

distinguishes adversarial proceedings from inquisitorial ones is whether claimants bear the responsibility to develop issues for adjudicators' consideration."). The question whether Obrien's telemarketing work constituted "past relevant work" under the regulations was not some extraneous or additional issue that, if not specifically called to the ALJ's attention, the ALJ would have no occasion to decide. On the contrary, as the ALJ himself recognized, the issue *inheres* in the five-step disability evaluation process that the ALJ was *required* to follow in determining whether Obrien was disabled within the meaning of the Act. Even granting that the fundamentally inquisitorial ALJ proceedings used in Social Security disability cases have some adversarial aspects, *see id*. at 90–92, *this* issue, which is inherent in the five-step process, relates more to the inquisitorial aspects of those proceedings, under which the SSA "assures claimants that [it] 'will consider *at each step of the review process* any information you present as well as all the information in our records,'" *id*. at 90 (emphasis added) (quoting *Sims*, 530 U.S. at 111 (quoting 20 C.F.R. § 404.900(b) (1999))).

Moreover—and importantly—the contentions that Obrien raised in the district court did not involve the presentation of new evidence or information that had not been presented to the ALJ. Although "[t]he ALJ always has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered even when the claimant is represented by counsel," *Celaya v. Halter*, 332 F.3d 1177, 1183 (9th Cir. 2003) (simplified), the claimant nonetheless bears some measure of "responsibility to develop" the *evidence* needed to support his or her claim for benefits, *id*. at 1184. *See* 42 U.S.C. § 405(g) (stating that the Commissioner may reject a claim based on the claimant's failure "to submit proof in conformity with any

regulation prescribed" by the Commissioner); *see also id*. (stating that the matter may be remanded to the agency if "there is new evidence which is material" and "there is good cause for the *failure* to incorporate such evidence into the record in a prior proceeding" (emphasis added)). Here, however, Obrien did not seek to present any new evidence in the district court. His argument was simply that, in light of the applicable regulatory standards that the ALJ himself stated he was applying, the determinations made by the ALJ were not supported by substantial evidence.

Given that SSA ALJ hearings are "informal, nonadversarial proceedings," and that ALJs are required to "look fully into the issues themselves" before rendering a decision on the disability determination, *Carr*, 593 U.S. at 91 (simplified) (quoting 20 C.F.R. § 404.944), an ALJ is to be expected, without issue-specific prompting by the parties, to make the predicate findings that are *necessary* under the governing five-step disability evaluation process to support the conclusions that the ALJ makes. Here, as the ALJ's own order recognized, he could not properly make any determination, at step four, that Obrien was able to perform his "past relevant work" as a telemarketer *unless* that telemarketing work met the applicable legal standards to qualify as "past relevant work." The ALJ thus did not need to be reminded by the claimant that, in order to render a decision on that particular ground, the ALJ had to evaluate whether the record evidence supported all of the findings that were necessary for that determination under the applicable legal standards. Accordingly, Obrien had no further responsibility to specifically flag the issue before the ALJ, and a judicially imposed issue-exhaustion requirement with respect to that issue is unwarranted under *Carr*. It was therefore open to Obrien to argue in the district court that, on

this administrative record, there was no substantial evidence to support a finding that his telemarketing work met the regulatory requirements to count as "past relevant work."

In arguing for a contrary conclusion, the Commissioner relies heavily on our previous statements that, "at least when claimants are represented by counsel, they must raise *all issues and evidence* at their administrative hearings in order to preserve them on appeal." *Shaibi*, 883 F.3d at 1109 (emphasis added) (quoting *Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999)). The Commissioner argues for a strictly literal interpretation and application of this statement, which would impose an across-the-board judicially created issue-exhaustion requirement on "*all* issues," including the issue Obrien has sought to raise in the district court and in this court. *Id*. (emphasis added). But that sweeping reading of *Shaibi* and *Meanel* would be directly contrary to the reasoning and result in *Carr*, which squarely held that the "issue" sought to be raised there— whether SSA ALJs are appointed in conformity with the Appointments Clause—was properly raised in federal court even though it had not been raised at the ALJ hearing. *Carr*, 593 U.S. at 95–96.

The Commissioner alternatively argues that we should construe *Carr* as narrowly applying only to "constitutional" issues, so that *all* nonconstitutional issues would remain subject to the Commissioner's preferred bright-line issue-exhaustion requirement. Indeed, according to the Commissioner, *Carr* is not "even persuasive, much less controlling" with respect to the exhaustion question presented here. Contrary to the Commissioner's arguments, we are not free to limit *Carr* to its specific facts while rejecting, as not "persuasive," the *reasoning* applied by the Court. *See Langere v. Verizon Wireless Servs., LLC*, 983

F.3d 1115, 1121 (9th Cir. 2020) (stating that our obligation "to follow the controlling opinions of the Court" "extends to the reasoning of Court decisions, too—not just their holdings"). As relevant here, *Carr*'s reasoning is flatly inconsistent with the Commissioner's proposed categorical approach to issue exhaustion, because *Carr* requires a more nuanced assessment of whether an issue-exhaustion requirement applies given the place of the underlying issue in the context of the administrative proceedings. Moreover, the fact that the *Carr* Court applied that controlling analysis only in the context of a constitutional issue and reserved judgment as to how that analysis might apply in other contexts, *see Carr*, 593 U.S. at 92 & n.5, does not make that analysis any less binding when lower courts subsequently address such other contexts. Accordingly, even if the Commissioner were correct in contending that *Meanel* and *Shaibi* require counseled disability claimants to exhaust "*all issues* . . . at their administrative hearings," *Shaibi*, 883 F.3d at 1109 (emphasis added) (quoting *Meanel*, 172 F.3d at 1115), that bright-line rule did not survive *Carr*. *See Miller v. Gammie*, 335 F.3d 889, 899–900 (9th Cir. 2003) (en banc). And for the reasons we have explained, an issue-exhaustion requirement is unwarranted here under *Carr*'s standards.

We emphasize, however, that our decision does not create a converse rule that *no* issues need to be specifically exhausted in ALJ proceedings before they may be raised in federal court. Such a converse rule would likewise be contrary to *Carr*. Indeed, while we reject the Commissioner's overbroad and out-of-context reading of *Meanel* and *Shaibi* as contrary to *Carr*, our analysis leaves largely intact the actual reasoning and results of those two cases. Both cases involved an effort to introduce new *evidence* in the district court, and new issues that were based

on that new evidence. *See Shaibi*, 883 F.3d at 1105–06, 1110 (addressing the claimant's contentions that the vocational expert's job estimates were contradicted by various government data sources that had not been presented to the agency); *Meanel*, 172 F.3d at 1115 (noting that the claimant's federal court challenge to the vocational expert's job numbers "relie[d] on new statistics that she admittedly failed to raise at both her hearing before the ALJ and the Appeals Council"). Applying an analysis that is consistent with *Carr*'s holding that the "critical feature" in the issue-exhaustion analysis is "whether claimants bear the *responsibility* to develop issues for adjudicators' consideration," *Carr*, 593 U.S. at 89 (emphasis added), *Meanel* and *Shaibi* held that the responsibility for presenting such additional evidence concerning the vocational expert's job numbers rested with the claimants and their counsel. *See Shaibi*, 883 F.3d at 1109 (noting that the ALJ had no duty under the statute, regulations, or caselaw to "*sua sponte* take administrative notice" of the types of "economic data" the claimant presented to the district court and that the Act generally required "good cause" before a claimant could rely on new evidence in court); *Meanel*, 172 F.3d at 1115 (emphasizing that the claimant "was represented by counsel who knew that *all relevant evidence* should have been brought to the ALJ's attention" (emphasis added)). *Meanel*'s and *Shaibi*'s reasoning and results are fully consistent with *Carr* to the extent that they hold that claimants generally may not present new evidence, and new issues dependent on that evidence, that they failed to present to the ALJ. Although those decisions thus remain fully binding in that respect, *see Miller*, 335 F.3d at 899–900, Obrien's case does not involve any such failure to present evidence, *see supra* at 20–21.

Because no administrative issue-exhaustion requirement precludes our consideration of the merits of Obrien's substantive arguments, we will proceed to address those arguments in the next section.

### III

The ALJ's determination that Obrien was not disabled rested on his finding that Obrien could perform his "past relevant work" as a "sales representative" and as a "telephone solicitor" (*i.e.*, telemarketer). The Commissioner conceded below, and in this court, that substantial evidence does not support the ALJ's finding that Obrien could perform his past work as a sales representative. Obrien contends that the remaining basis for the ALJ's decision also fails, because his work as a telemarketer in 2003 and 2009 does not count as "past relevant work" within the meaning of the applicable regulations.

The applicable regulations under both Title II and Title XVI contain an identical definition of "past relevant work," which is written (like most of the regulations governing the disability determination process) as if the agency were directly addressing the claimant: "Past relevant work is work [1] that you have done within the past 15 years, [2] that was substantial gainful activity, and [3] that lasted long enough for you to learn to do it." 20 C.F.R. §§ 404.1560(b)(1), 416.960(b)(1) (2016).**[8]** Obrien contends that neither of his

---

[8] While this appeal was pending, the SSA amended the regulations under both Title II and Title XVI to shorten the 15-year period to a five-year period. *See* 89 Fed. Reg. 27653 (Apr. 18, 2024). However, by its terms, this amendment applies only to "claims newly filed and pending beginning on June 22, 2024." 89 Fed. Reg. 48138 (June 5, 2024). All further references to the regulations are therefore to the previous versions applicable to this case.

two instances of telemarketer work in 2003 and 2009 satisfies these regulatory requirements.  We agree.[9]

## A

As to the 2003 telemarketing work, there is no basis to conclude that it was "done within the past 15 years," as required by the regulations.

The Title II regulations state that the 15-year period is calculated backwards from "the time we are deciding whether you are disabled (or when the disability insured status requirement was last met, if earlier)."  20 C.F.R. § 404.1565(a).  Under Title XVI (which is not subject to the same disability insurance status requirement), the relevant time period runs simply from "the time we are deciding whether you are disabled."  *Id*. § 416.965(a).  In the district court and in this court, both sides have agreed with the ALJ's conclusion that the last date on which Obrien met the disability insured status requirement was September 30, 2019.  In their district court briefing, both sides also agreed that the relevant date of the agency's disability determination was the date of the ALJ's decision, *i.e.*, November 7, 2019.

The district court nonetheless rejected the parties' position on the latter point, instead holding that the relevant date was when the agency *initially* denied benefits, which was April 7, 2017.  In support of its view, the district court quoted, with added italics, Social Security Ruling ("SSR") 82-62, which states that the "relevant 15-year period will be determined" based on "the 15 years prior to the time of adjudication at the *initial*, reconsideration or higher appellate

---

[9] Obrien contends that the record is not entirely clear as to whether the ALJ relied on the 2003 telemarketer work or only on the 2009 telemarketer work.  We need not resolve this issue, because we conclude that the ALJ's decision is flawed either way.

level." SSR 82-62, 1982 WL 31386, at *2 (Jan. 1, 1982) (emphasis added). Contrary to what the district court thought, this quoted language squarely refutes its conclusion. If, as the district court held, the relevant date were *always* the initial decision date, there would have been no reason for the SSR to also mention "adjudication" at the "reconsideration or higher appellate level." *Id.* The alternative reference to all three possible dates in SSR 82-62 can only reasonably be understood as referring to *whichever* date happens to be applicable in light of the particular procedural history of the matter in the agency. Here, because the Appeals Council denied review, the relevant "adjudication" is the ALJ's decision. *See supra* at 7. The district court therefore erred in rejecting the parties' agreement that the relevant date of the agency's disability determination was November 7, 2019.

Because the last-insured date was September 30, 2019, which is earlier than November 7, 2019, the 15-year period for Title II purposes runs backwards from the former date. For Title XVI purposes, the 15-year period instead runs from November 7, 2019. Because 2003 is more than 15 years before either date, Obrien's 2003 telemarketing work is plainly outside the respective 15-year periods applicable under Title II and Title XVI. The Commissioner argues that this does not matter, because the 15-year period is assertedly only a guideline and, in appropriate cases, prior work that occurred more than 15 years ago may still be considered. But in reciting the applicable legal standards that he was applying to Obrien's case, the ALJ made no mention of any such discretionary exception to the 15-year timeframe and instead described that period as a bright-line requirement. Because "[w]e review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ

on a ground upon which he did not rely," *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (citing, *inter alia*, *SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943)), the Commissioner's reliance on such an asserted exception is unavailing.

Accordingly, on this record, substantial evidence does not support the ALJ's determination that Obrien's 2003 telemarketing work met the applicable regulatory requirements to count as past relevant work.

**B**

The only remaining question is whether Obrien's 2009 telemarketing work meets the relevant regulatory requirements. Although that work is well within the relevant 15-year time periods under the Title II and Title XVI regulations, substantial evidence does not support the ALJ's conclusion that this work constituted "substantial gainful activity." 20 C.F.R. §§ 404.1560(b)(1), 416.960(b)(1).

In determining whether past work qualifies as "substantial gainful activity" under the applicable regulations, the "primary consideration" is "the earnings [the claimant] derive[s] from the work activity." 20 C.F.R. §§ 404.1574(a)(1), 416.974(a)(1). Specifically, a particular past employment will generally be considered "substantial gainful activity" if the claimant's average monthly wages exceed a specified amount calculated in accordance with a formula set forth in the regulations. *Id*. §§ 404.1574(b)(2)(ii)(B), 416.974(b)(2)(ii)(B). The details of the formula are not important here, because both sides agree that the applicable amount for 2009 produced by that formula, which is listed on the agency's website, is $980 per month. *See Substantial Gainful Activity*, SOC. SEC. ADMIN., https://www.ssa.gov/oact/cola/sga.html [https://perma.cc/NE63-X8T7].

The parties also agree that in 2009, Obrien's total earnings from his telemarketing work were $3,172.64. However, given the specific evidence in the record as to the *portion* of 2009 in which that work was performed, the parties disagree as to what the proper denominator is for determining Obrien's average *monthly* earnings.    In connection with his application, Obrien completed various forms asking about his work history, and those forms asked him to list only the "month" and "year" in which the relevant employment started and ended, and not the specific days. Accordingly, Obrien listed the timeframe of his telemarketing work as "January 2009" through "April 2009."[10]   Obrien therefore argues that, in order to calculate his average monthly earnings, his total earnings of $3,172.64 should be divided by four, which yields $793.16, well below the $980-per-month requirement to find substantial gainful activity.    The Commissioner notes, however, that on one form Obrien also provided an additional handwritten narrative comment in which he stated that he "worked at the job for 3 month [*sic*] and was terminated."    The Commissioner thus argues that the total earnings of $3,172.64 should be divided by three, which yields $1,057.55, thereby surpassing the requisite $980-per-month threshold.

Neither side has pointed to any agency regulation or ruling that explicitly states how the average monthly salary is to be calculated where, as here, the record suggests that the claimant did not work the entirety of the four calendar months listed.  On the one hand, the fact that the agency's

---

[10] Elsewhere on one of the forms, Obrien also stated that he "stop[ped] working" on "06/05/2009."  However, neither side has contended that this comment refers to Obrien's *telemarketing* work, which all parties agree was completed earlier in the year.

own forms do not request any more granular detail than the listing of the relevant calendar months arguably suggests that the total earnings should simply be divided by the number of calendar months listed.  Under this view, if the agency believed that it mattered whether the first or last months (or both) were only partial months, it could and should have requested that the timeframes be listed down to the exact day or at least that they be listed by number of weeks.  In addition, the relevant SSR that both sides cite for general guidance about short periods of employment tellingly uses examples that break down the earnings by the total for each calendar month, and no further.  *See* SSR 83-35, 1983 WL 31257, at *3–5 (Jan. 1, 1983).  On the other hand, the SSA's Program Operations Manual System ("POMS"), which "provides nonbinding guidance to SSA employees," *Cooper v. Social Sec. Admin.*, 131 F.4th 995, 1004 (9th Cir. 2025), affirmatively indicates that the agency should account for "a partial month of work activity," Soc. Sec. Admin., POMS, DI 10505.015, *Averaging Countable Earnings*, https://secure.ssa.gov/poms.nsf/lnx/0410505015 (May 22, 2020) [https://perma.cc/B8HF-G3LV].  But notably, the manner in which that is to be done, according to the POMS, is to identify, if possible, any partial months and then to *exclude* them (and any earnings attributable to them) in calculating the average, so as to ensure that the average is calculated based only on apples-to-apples *full* months.  *See* POMS, DI 10505.015 (stating that such a partial month constitutes a "significant change" in work patterns or earnings, thereby requiring that it be treated separately under 20 C.F.R. § 404.1574a).[11]  Here, however, there is nothing

---

[11] Section 404.1574a provides, in relevant part, that "[i]f there is a significant change in your work pattern or earnings during the period of work requiring evaluation, we will average your earnings over each separate period of work to determine if any of your work efforts were

in the record about the specific portions of January and April 2009 in which Obrien performed his telemarketing work. Nor is there any basis for allocating the total wages of $3,172.64 among the four calendar months in which it was performed.

We need not resolve this issue about the proper method for calculating average monthly income in the context of partial months.  Even assuming *arguendo* that the Commissioner is correct in arguing that *calendar* months should be disregarded and that the total amount of wages should simply be divided by the specific length of time in which it was earned, the ALJ's decision here still cannot be sustained.

On this record, there is no nonspeculative basis for concluding that, in describing the length of time he worked as a telemarketer as "three months," Obrien's handwritten narrative meant to denote *exactly* three months as opposed to *approximately* three months.  And Obrien's case is one where such exactitude makes all the difference: if Obrien's actual length of employment was three months and one week (*i.e.*, 3.25 months), the relevant monthly average would be $976.20, which is *below* the $980 threshold.  Particularly where the agency's own forms do not request that information about timing be supplied with a greater degree of precision than at a monthly level, it seems unwarranted, without some clarifying inquiry, to attach case-dispositive weight to the lack of a greater level of granular detail.

Moreover, there is a further indication that the relevant timeframe is more complicated than the Commissioner posits.  Obrien described this work as having been performed

---

substantial gainful activity."  20 C.F.R. § 404.1574a(c); *see also id*. § 416.974a(c) (same for Title XVI).

on a full-time 40-hours-a-week basis at $11 per hour, but if he worked continuously at that pace, he would have earned more than $3,172.64 in just over seven weeks (*i.e.*, less than *two* months). That strongly suggests that the telemarketing work may have been performed *intermittently* over the January–April timeframe, making it all the more difficult to say which months involved partial work and to what extent. Given these critical ambiguities in the evidence, this is a paradigmatic case in which "the record is inadequate to allow for proper evaluation of the evidence," thereby triggering the "ALJ's duty to develop the record further." *Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020) (citation omitted); *see also Carr*, 593 U.S. at 90 (noting that, in light of the generally nonadversarial nature of SSA procedures, the ALJ may sometimes have a "duty to investigate the facts and develop the arguments" necessary to make an accurate determination of eligibility for benefits). Where, as here, additional development of the record by the ALJ is required to permit an adequate determination, the ALJ's decision is not supported by substantial evidence and must be remanded for further proceedings. *See Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996).

## IV

For the foregoing reasons, we reverse the district court's judgment and remand the case to the district court with instructions to remand to the agency for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**